ISAAC W. BROOKS AND ANOTHER, RECEIVERS, vs. THE TOWN OF HARTFORD.

Hartford Dist., May T., 1891. ANDREWS, C. J., LOOMIS, SEYMOUR, TORRANCE and J. M. HALL, Js.

Receivers of an insolvent life insurance company were appointed by the Superior Court and its charter annulled. Commissioners were appointed by the court to receive and pass upon claims against the estate, and the assets of the company, except certain bonds, were converted into cash, and were held by the receivers awaiting the determination of the court as to the claims to be allowed and an order for the payment of a dividend upon the same. Held that the property was not taxable while in this condition.

The provision of Gen. Statutes, § 3841, that trustees, residing in this state, "having in their hands personal property liable to taxation belonging to the trust estate," shall make return thereof to the tax assessors, applies only to property in the hands of trustees which is invested in some permanent form and from which interest or income is sought to be derived.

The property was in the custody of the court, and in the hands of the receivers only as an arm of the court; but if the legal title is to be regarded as in the receivers, yet the property did not "belong" to them in the sense in which that term is used in Gen. Statutes, § 3802.

The funds in their hands really belonged to the creditors of the insurance

company and the receivers were merely the conduit through which they were passing to the creditors.

[Argued May 6th—decided June 1st, 1891.]

APPLICATION of the receivers of the Charter Oak Life Insurance Company for relief from a tax assessment of the funds and property in their hands ; brought to the Superior Court in Hartford County.

The application alleged that on September 22d, 1886, the insurance company, upon proceedings instituted by the insurance commissioner of the state, in the Superior Court in Hartford County, had been adjudged insolvent, and the applicants, Isaac W. Brooks and Edmund A. Stedman, had been appointed receivers of the company ; that they accepted the office and had ever since duly discharged its duties ; that on the 3d day of May, 1888, the charter of the company had been annulled by the court ; that the assets of the company at the time of their appointment were largely real estate in other states ; that other persons had been appointed receivers in those states, but that the applicants had intervened and obtained decrees there for the transfer of the funds remaining in the hands of the local receivers after the settlement of their administrations, to the applicants for distribution under the orders of our own court; that they had to their credit on the 1st day of October, 1890, $464,010 in cash, deposited in banks of the city of Hartford, of which more than $300,000 had been received from the sale of property situated in other states ; that of the remainder $98,000 had been received from the treasurer of this state as trustee, being a deposit made by the company under a law requiring it; and that they had also bonds of the Quinnemont Coal & Iron Company to the amount of $31,000 ; that a large proportion of the policy-holders of the company reside out of the state and many of them in the states from which funds from the sale of property there had been received ; that the matter of the claims upon the funds was pending for decision in the Superior Court ; that the estate of the company was badly insolvent and would pay but a

small dividend to its policy-holders ; that the board of relief of the town of Hartford had notified the applicants that they were about to add their names as receivers to the list of tax-payers of the town and assess them for $464,009.98 on deposit in the Hartford banks, and for the bonds of the Quinnemont Coal & Iron Company of the value of $31,000, and cited them to appear and show cause to the contrary ; that they appeared and were heard, but that the board of relief made out a list against them for $544,511, including ten per cent forfeiture for not filing an assessment list ; that on the 1st day of October, 1890, the said Brooks resided in Torrington in this state ; and praying that said action of the board of relief might be annulled and the applicants relieved of all taxation on account of the property in their hands as receivers.

The answer of the town of Hartford admitted all the allegations of the application ; averred that Mr. Stedman was at the time and still was a resident of Hartford ; that under the direction of the court the receivers had their sole office as such in Hartford and had there managed the business of the receivership ; that the receivers held the property as stated, and that it was liable to taxation in their hands and to an addition of ten per cent for the neglect to make an assessment list containing it.

The court found all the allegations of the application and answer true, and reserved the case for the advice of this court.

*H. C. Robinson* and *C. E. Gross*, for the plaintiffs.

1. The plaintiffs are not " trustees " of the Charter Oak Life Insurance Company, within the meaning of the statute (Gen. Statutes, § 3841,) which requires trustees to make a return to the tax assessors of the property in their hands. A receiver is a mere ministerial officer of a court of chancery, and as a general rule is a mere custodian, having no power except as conferred by the court. Beach on Receivers, § 1. The receiver, being an officer of the court, is not to be regarded in any sense as the agent or representa-

tive of either party. Id., § 2. The state becomes the administrator of the affairs of the insolvent corporation and in the person of its officer, the insurance commissioner, enforces the statutory provisions through the courts. The receivers are but its ministerial officers. They are officers of the law duly appointed at the instance of the state. *Relfe* v. *Rundle*, 103 U. S. R., 225. Receivers are distinguished from persons acting in a fiduciary capacity. Beach on Receivers, § 249.

2. The statute refers to the property liable to taxation when held by trustees, as personal property "in their hands." Gen. Statutes, § 3841. The personal property of the receivership is not in the hands of the receivers. It is "*in custodia legis.*" Beach on Receivers, §§ 2, 221, 249; *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. R., 236; *Thompson* v. *Phœnix Ins. Co.*, id., 297; *Ellis* v. *Boston, Erie & Hartford R. R. Co.*, 107 Mass., 28. The receivers have no control or right of disposition over these funds except as given to them by order of court. The court could have ordered these cash funds paid into court as fast as received. It accomplished the same thing when it ordered the cash deposited in national banks.

3. The property was not liable to taxation. Previous to the appointment of the receivers, the company was doing a mutual life insurance business. As such it was obliged to pay a tax to the state. Gen. Statutes, §§ 3933–3936. Such a tax was a license or franchise tax. *Coite* v. *Conn. Mut. Life Ins. Co.*, 36 Conn., 512. This tax was upon the privilege given to it by the state of doing business. The right to tax expired when the state deprived the company of the right to do business. *Com.* v. *Lancaster Sav. Bank*, 123 Mass., 493; *Jones* v. *Winthrop Sav. Bank*, 66 Maine, 242. The state having granted a franchise which is taxed while used, has recalled it, and is now simply returning to the proper owners the property which the franchise drew to it. It has been the universal rule in this state not to tax such funds. In the case of the Townsend Savings Bank, receivers were appointed in 1875; its charter was annulled

in 1882; its funds are not yet distributed; the receivers at times held from $600,000 to $700,000, but no taxes were ever assessed. So also in the case of the receivership of the American Mutual Life Insurance Company, and of the Workingmen's Five Cent Savings Bank here in Hartford.

4. Such a tax would be inequitable. Other states have extended in this receivership the principles of comity to the utmost. *Parsons* v. *Charter Oak Life Ins. Co.*, 31 Fed. Rep. 305; *Fry* v. *Same*, id., 197; *Fyler* v. *Same*, Superior Court, Cook county, Ill., January, 1888; *Fitzgerald* v. *Same*, Supreme Court, city of New York, September, 1888. Having the funds under their jurisdiction, with the right to tax and distribute the same, yet the courts ordered the funds sent here to be administered, although in one state there was a positive decision of the highest court denying the right to such transfer. To tax funds received in such manner and for such purposes of distribution would be but a poor return for such comity.

5. The town of Hartford has no right to tax these funds. The annulment of the charter in 1888 did not change the character of the receivers, nor give a new situs to the funds of the receivership. Their only situs was the state. They were in the custody of the Superior Court, and the administrator was the state itself.

*W. F. Henney* and *A. L. Shipman*, for the defendant.

1. It is the policy of the law to require all property, except such as is specially exempted, to bear its proportion of the public burdens. *Cope* v. *Norwich*, 24 Conn., 30; *Coite* v. *Society for Savings*, 32 id., 173; *Cornwall* v. *Todd*, 38 id., 443, 447. "Property *in custodia legis* not being included within the exceptions, falls of course within the general rules." *People* v. *Lardner*, 30 Cal., 242. See also *County of Yuba* v. *Adams*, 7 id., 35; *In re Mitchell*, 16 Nat. Bank Reg., 535; *Jones* v. *Bridgeport*, 36 Conn., 283; *Crane* v. *Kilpin*, L. R., 6 Eq., 334. This statement of principle places the burden upon the receivers of pointing out the statute which

exempts from taxation the property they officially hold. No such statute can be found.

2. The taxation of this property is specifically provided for by Gen. Statutes, § 3828. " Personal property in this state or elsewhere, not exempt by this title, shall for the purpose of taxation include all notes, bonds, stocks, moneys, choses in action, etc., and such property belonging to any resident in this state shall be set in his list in the town where he resides." And § 3841 provides for the manner of listing property held in trust, and requires all trustees residing in this state, " having in their hands personal property liable to taxation belonging to the trust estate," to make return thereof to the assessors.

3. This property belongs to the receivers within the meaning of the statute. While the charter of the company remained in force the title of the receivers to the personal property might have been affected by whatever vitality was left in the company. But the title became absolute and complete, and the property thereafter belonged to the trustees. " Receivers were appointed for an insolvent life insurance company and a decree was passed, under a statute authorizing it, vesting in them the property of the company and annulling its charter." *Wilcox* v. *Continental Life Ins. Co.*, 56 Conn., 468. " The purposes of the act require that such title should at once vest in the receiver, and we think the act should receive such a construction as to effectuate its purposes." *Attorney Gen.* v. *Atlantic Mut. Life Ins. Co.*, 100 N. Y. 279. It is held in Connecticut that property purchased by a receiver out of the funds in his hands officially belongs to the receiver, and that the title to it is vested in him. *Blake Crusher Co.* v. *Town of New Haven*, 46 Conn., 473. Our jurisprudence, by a line of decisions, seems to have assumed as a matter beyond question that the title to personal property is in the receiver upon the annulling of the charter of the company, as is clearly indicated by the following cases :—*Bank of N. America* v. *Wheeler*, 28 Conn., 433 ; *Litchfield Bank* v. *Peck*, 29 id., 384 ; *Pond* v. *Cooke*, 45 id., 126 ; *Blake Crusher Co.* v. *Town of New Haven*, 46 id.,

473; *Cooke* v. *Town of Orange*, 48 id., 401; *Wilcox* v. *Continental Life Ins. Co.*, 56 id., 468. But it will be said that the court and not the receiver is the true owner of the property. The answer to this is apparent. In the first place, the statute does not put the title there. And in the next place, the legislature has recognized the receiver as having the legal title, by special act authorizing the state treasurer " to transfer, surrender and deliver " to the receivers " securities held by him in trust for the policy-holders." 10 Special Laws, 431.

4. Admitting, for the sake of the argument, that the receivers are officers of the court and that the funds in their hands are in the custody of the law, the funds are nevertheless taxable property, liable to bear their proportion of the public burdens. The cases in support of this proposition are too numerous and decisive to admit of question. *In re Mitchell*, 16 Nat. Bank Reg., 535; *Central Trust Co.* v. *Wabash etc. R. R. Co.*, 26 Fed. Rep., 11; *Greeley* v. *Provident Savings Bank*, 98 Misso., 458; *Stevens* v. *N. York & Oswego R. R. Co.*, 13 Blatch., 104; *Central Trust Co.* v. *N. York City & Northern R. R. Co.*, 110 N. York, 256; *Spalding* v. *Commonwealth*, 10 S. W. Rep., (Ky.,) 420.

5. The receivers are trustees within the meaning of that term as employed in section 3841 of Gen. Statutes. In *Cooke* v. *Town of Orange*, 48 Conn., 401, PARK, C. J., says of a receiver:—" The receiver held the property in trust for all the creditors." In *Atlas Bank* v *Nahant Bank*, 23 Pick., 480, SHAW, J., says:—" The persons appointed are to be receivers or trustees, indicating a power much larger and of a different character from that of ordinary receivers appointed in a chancery suit." *In re Mitchell*, 16 Nat. Bank Reg., 537, LOWELL J., says: " There is no doubt that assignees are trustees with great powers and large discretion." The case of *Relfe* v. *Rundle*, 103 U. S. R., 222, presents a striking analogy to this case. A life insurance company was dissolved by decree of a Missouri court, and its property vested in Relfe, superintendent of the insurance department. The question was the standing in court of Relfe in a motion to

remove the cause. The court said (page 225 :) " Relfe is not an officer of the Missouri state court, but the person designated by law to take the property of any dissolved life insurance corporation of this state and hold and dispose of it in trust for the use and benefit of creditors and other parties interested. He was the statutory successor of the corporation for the purpose of winding up its affairs. As such he represents the corporation at all times and places in all matters connected with his trust. He is the trustee of an express trust, with all the rights which properly belong to such a position." The status of the receivers in this case has already received a judicial decision in the federal court upon a construction of this very statute. In *Parsons* v. *Charter Oak Life Ins. Co.*, 31 Fed. Rep., 305, SHIRAS, J., (page 311) says : " The charter and laws of Connecticut provide for the appointment of a receiver to take charge of the property of the company in case of its dissolution, and the duty imposed upon such receiver is not materially different from that imposed upon the state superintendent under the Missouri statute, considered in *Relfe* v. *Rundle*. For the purpose of collecting the assets of the company he is the successor of the dissolved corporation ; he is, in fact, a trustee representing the interests of the stockholders and creditors of the company, deriving his authority not alone from the order of court appointing him, but from the charter of the company, and the statute of the state creating the corporation." Our Supreme Court has said that we must construe statutes of taxation, the language permitting, so as to give effect to the obvious meaning and intention of the legislature, rather than to defeat that intention by a too strict adherence to the letter. *Cornwall* v. *Todd*, 38 Conn., 443. It is incredible that our legislature intended that a fund amounting to half a million dollars should remain within our jurisdiction and protected by our laws, and yet be exempt from the universal duty of paying its price for protection. But here we are met by this bold contention on the part of the receivers :—Admitting that there is no statutory exemption of the property from taxation—admitting that it is here

in Hartford where the trust is administered under the protection of the local government—admitting that but for that protection the administration of the trust would be impossible, yet the property cannot be made to pay its just proportion of the public burden, simply because the legislature has made no provision for listing it. This position is untenable. If the court is satisfied that the property is taxable, it is not difficult to find in our statutes, either expressly or by inference, a way to put it in the assessment lists. The term "trustee" used in § 3841 is manifestly broad enough for the purpose of having this property listed to embrace receivers, as well as all other trustees with regard to whom no special provisions are made. Otherwise vast amounts of property would escape paying for the protection which they enjoy.

6. It is in the line of public policy and good conscience that the property in the hands of these receivers should be taxed, and so contribute to the maintenance of the government under whose protection the trust is administered. In *Central Trust Co.* v. *Wabash etc. R. R. Co.*, 26 Fed. Rep., 11, we find this clear statement of principle:—"I think that in levying and collecting taxes the state is exercising its sovereign power, and that there should be no interference with its collection of those taxes in its prescribed and regular methods, even by a court having property in the possession of its receivers, unless it is first charged that the taxes are in some way illegal or excessive. The mere fact that the receivers have no money on hand to pay these taxes is no excuse for stopping the process of the state for their collection. It may be hard for the road to pay these taxes, but it can be no harder for a corporation, in the hands of receivers, to pay taxes than it is for an individual; and the remedy of the state in each case is the same." See also *Greeley* v. *Provident Savings Bank*, 98 Misso., 458; *George* v. *St. Louis etc. Cable Co.*, 44 Fed. Rep., 117; *Stevens* v. *N. York & Oswego R. R. Co.*, 13 Blatch., 104; *In re Mitchell*, 16 Nat. Bank Reg., 535; *Central Trust Co.* v. *N. York City & Northern R.*

*R. Co.*, 110 N. York, 256 ; *Spalding* v. *Commonwealth*, 10 S. W. Rep., 420.

7. The legal rights of receivers in property held officially, and those of a sheriff, or clerk of court, or committee appointed to sell land, in property in their custody, are essentially different. Neither the sheriff, nor the clerk, nor the committee, have the slightest interest in the property in their charge. They are the merest conduits through which the law operates to effect its purposes of justice and equity. All that is done by such officers in the premises is absolutely controlled and directed by the statutes or by the court in compliance with them. With receivers the case is different. The property vests in them ; they have a title to it ; they reduce choses in action to possession ; their duty in carrying out the trust imposed upon them is perfectly clear and unquestionable, and only in cases of doubt, or in the final distribution of the property, or in the changes of it from one class of property to another, in realizing on the assets in their hands, are they supported and guided by the orders of court. Their powers are larger in many particulars than those of probate trustees, although their duties are quite analogous to the duties performed by such officials. They are greater than a mere agent or officer of the court ; greater than the sheriff holding property under attachment ; greater than the clerk holding money on deposit, and greater than the committee appointed to sell land, because they have, in the case at bar, vested in them all the contract rights and duties belonging to the defunct corporation. A receiver is selected, not because of his capacity as a mere depositary, since any bank or trust company would supply the requirements of such an appointment, but because of his skill in the management, conservation, collection and accumulation of vast amounts of property confided to him in trust, and because of the fact that the parties interested in the funds will be materially affected in the final disposition thereof by the exercise of skill and good judgment, or by the lack of it, in the management of the trust estate on the part of him who administers the trust. Whether

the receivers have absolute title in the property or only a limited one is of little importance in the light of the fact that they, and they only, are the parties claiming the possession and control of it, and that the most elaborate search for any other parties than the receivers having claim to it would be futile. That title resides not in the policy-holders, not in the stockholders, not in claimants or creditors, not in the court, for the court has never yet been known to make and execute a deed of property so held; but the title is in the receivers in whose hands it is found. The property is situated in the town of Hartford, and one of the receivers is resident there, and the trust is administered there. It is idle to claim, under such circumstances, even if section 3841 were eliminated from the statute book, that no place could be found by the state where that property could legally be listed.

ANDREWS, C. J. The plaintiffs are the receivers of the Charter Oak Life Insurance Company, a mutual life insurance corporation chartered by this state and located in the city of Hartford. They were appointed in September, 1886, pursuant to section 2869 of the General Statutes, which authorizes the Superior Court or a judge of the Supreme Court of Errors under certain circumstances to appoint a receiver of an insurance company, and then enacts that "said court or judge may provide the mode of proving claims against such company, and appoint a committee to hear and decide upon them, and may limit and extend the time for the presentation of such claims, and may make all necessary orders in reference to the delivery to and possession by such receiver of the assets and property of such company and the sale and conveyance of the same by him, and may direct the application of the avails of such assets and property equitably in satisfaction of the claims proved against such company, and the payment of the present value of its outstanding policies to policy-holders, either in whole or in part, or to the re-insurance of its outstanding policies in some solvent company; and said court or judge shall

annul the charter and decree the dissolution of such company, and may make all other orders and decrees necessary and proper in reference to winding up the affairs of such company and the disposition of its property." Subsequently the charter of the company was annulled.

At the time of its dissolution the company was the owner of property in this state, of a fund in the hands of the state treasurer, and of real estate situated in various other states of the United States. The plaintiffs entered at once upon the discharge of their duties, and, acting according to the orders made from time to time by the court, have converted most of this property into money, have collected debts due to the company so far as they were able, and have received from the state treasurer, by authority of the General Assembly, the fund that was in his hands. They have also paid from time to time such expenses and claims as they have been directed to do. They had in their possession as such receivers, on the first day of October, 1890, the sum of $464,000, on deposit to their credit in various banks in Hartford. They had also in their hands bonds of the Quinnemont Coal & Iron Company to the amount of $31,000, secured by mortgage of real estate in the state of West Virginia.

The court also appointed a committee to hear and decide upon the claims against the company, directed notice to be sent to all the policy-holders and to all other known creditors, and limited a time within which the claims should be presented to the committee, which limit has been extended once or more by a suitable order. The report of the committee has been made to the Superior Court, and is now pending therein upon remonstrances thereto.

It is alleged in the complaint, and found by the court, that of the money so in the hands of the plaintiffs more than $300,000 has been received by them from the sale of the property of the insurance company situated in other states and brought to this state to be marshalled and paid over to the persons found entitled thereto. More than $98,000 they received from the state treasurer as above stated. From

what source the balance was received is not stated. It is also alleged and found that they had this property in their hands on said first day of October, and have ever since held it, awaiting the decision of the Superior Court, for the purpose of paying it to the persons who should be found entitled to it by the committee or by the court, upon such order as should be made by the court in the premises; and that the plaintiffs have no other title to or interest in the property than as above stated.

On or about the fourth day of February, 1891, the board of relief of the town of Hartford made out a tax-list against the plaintiffs of taxable property to the amount of $495,000, and added thereto ten per cent for not making out a sworn list, and assessed the plaintiffs to pay taxes on the amount of $544,511. From that action of the board of relief the plaintiffs made this appeal to the Superior Court. The case is reserved for the advice of this court.

The property here in question is in money and bonds, and so if only its form was decisive it would be taxable by section 3828 of the statutes. The plaintiffs, however, were under no duty to make out a list of it or to pay taxes on it pursuant to that section unless the property belonged to them. The decree by which they were appointed to be receivers does not in terms vest the title to the property in them; but perhaps such would be its effect, especially after the charter of the corporation was annulled. For the purposes of this case it may be admitted that the legal title is in the receivers. Yet it cannot be said that the property *belongs* to them, in any sense attached to that word in the law of taxation. Gen. Statutes, § 3802. They have no beneficial interest in it. Their title is at the most temporary, uncertain, and only for the purpose of facilitating the settlement of the affairs of the corporation. They are an arm of the court for that purpose. They are to do with the fund just what the court directs them to do. The fund is really in the custody of the court. It is now deposited in banks in Hartford, rather than in some other town, because the court has ordered it to be so deposited, and not because

the plaintiffs have any choice or any discretion in the matter. They have no power to make any payment—not even for taxes, except upon the order of the court. And their title, such as it is, is liable to be divested at any time. On the other hand the effect of the decree which dissolved the corporation was to vest all its property equitably in the creditors of the corporation in proportion to their respective claims. Since the passing of that decree the creditors have been and now are the beneficial owners of all its property. Within the meaning of the statute just cited the property *belongs* to them. That it was not paid over to them at once was because they were not known and because the amount of their claims was not ascertained; and because the property of the corporation was then widely scattered and not in a form in which payments could be made. But their rights, when determined, will be determined as of the date of that decree. When their claims are paid they will be paid as of that date, *nunc pro tunc.* There has been the lapse of time because there must be orderly proceedings in court in the adjustment of the debts and claims, and in order to reduce the assets of the corporation into money so that the debts and claims could be paid.

The defendants insist that the plaintiffs are trustees, and that by section 3841 of the statutes the property in their hands is expressly made liable to taxation against them and in the town of Hartford. In a general sense it may be true that they are trustees. Any one who has in his custody money belonging to another person is in a sense a trustee for that other person. As said by HINMAN, J., in *Beers* v. *Lyon,* 21 Conn., 614—" In a certain sense a mere bailee or agent is a trustee; because he has property delivered to him in the confidence that he will do with it according as he is directed by the bailor." From the considerations already shown it will be obvious that the trusteeship of the plaintiffs is closely analogous to such a trusteeship as is mentioned by Judge HINMAN.

The section of the statutes last cited seems to have in view the property which is the subject of the trust quite as

much as it does the person of the trustee. Its language is— " every trustee residing in this state, having in his hands personal property liable to taxation belonging to the trust estate, 'shall," etc. Further along it speaks of " the town in which the affairs of said trust are managed and administered " and of the town " in which the beneficiary resides." All through it presents the idea of property in the hands of a trustee which is invested in some permanent form and from which interest or income is sought to be derived. We are convinced that the plaintiffs are not such trustees, and that the fund is not such a fund as seems to be contemplated by that section.

There is another view which leads to the same conclusion. Considerably more than half the whole fund has come from property in other states which was never taxable here. A large proportion of it belongs and must be paid to creditors in other states who have never been and are not now liable to pay taxes in this state. Considered with reference to the actual location from which it came, or with reference to the residence of the persons to whom it now belongs, it is not taxable in this state. The plaintiffs are the mere conduit through which the money is being transmitted by the order of the court from the dissolved corporation to its various creditors. In the transit the money came into this state and was delayed here awaiting the termination of proceedings in court. It happened to be in Hartford on the first day of October, 1890. It seems to us that the title which the plaintiffs have is not such as to impress it with a situs in the town of Hartford, so as to make it liable to taxation in that town.

The Superior Court is advised to render judgment for the plaintiffs.

In this opinion the other judges concurred.