IN RE ASSESSMENT OF TAXATION OF CERTAIN LAND CONTRACTS TO H. E. BOYD, Referee; DALLAS COUNTY, IOWA, and HENRY P. LODS, County Auditor, Appellants, v. H. E. BOYD, Referee, Appellee.

**Taxation:** LAND CONTRACTS.   An enforcible contract for the sale of
1 land is subject to taxation as against the owner, a trustee or one having a pecuniary interest therein.

**Same:** CONTRACTS BY REFEREE IN PARTITION.   Contracts for the sale
2 of land made by a referee in partition, appointed by the court simply to sell and partition the proceeds among the owners, are not taxable; as they partake of the nature of the realty and do not become personalty until the proceeds come into the hands of the owner.

*Appeal from Dallas District Court.—* Hon. Edmund
Nichols, Judge.

Monday, June 8, 1908.

This is a proceeding to charge a referee in partition
with taxes upon certain contracts made by him for the sale
of lands belonging to the heirs of Elias Cardell, deceased.
The trial court held that the referee was not liable for taxes
upon the contracts, and Dallas county and its auditor ap-
peal.— *Affirmed.*

*D. H. Miller,* County Attorney, and *Miller & Russell,*
for appellants.

*L. V. Harpel* and *Cardell & Fahey,* for appellee.

Deemer, J.— The facts are not in dispute. So far as
material, they are as follows: In January of the year 1905
H. E. Boyd, a resident of the town of Minburn, in Dallas
county, was by order of court appointed referee to sell cer-
tain real estate involved in a partition suit among the heirs
of Elias Cardell, deceased. Pursuant to said order, Boyd
entered into several contracts for the sale of different por-
tions of said land, which contracts were reported to and ap-
proved by the court appointing the referee. All this was
done during the year 1905, and all save one of these con-
tracts were in the possession of the referee on January 1,
1906. The referee did not return these contracts for as-
sessment, and thereafter the county auditor gave him notice
to show cause why these contracts should not be assessed.
Boyd appeared and filed his objections, and these were over-
ruled, and the auditor entered them for assessment. There-
upon the referee appealed from said order to the district
court, where his objections were sustained, and the assess-

ment annulled and discharged.   The appeal is from this ruling.

The order of the court appointing the referee directed him to make sales of the land and to divide the proceeds among the owners according to their respective shares, and authorized him to make sales for cash or partly for cash, the balance to be paid in three equal annual payments.   Pursuant to this authority, the referee entered into sixteen contracts which are involved in this controversy.   In each of these contracts the referee agreed to sell to the purchaser all his right, title, and interest in and to the real estate describing it for an expressed consideration, naming it, and the purchaser agreed to purchase the same for an agreed price and to pay that sum to the referee, his heirs or assigns, in a manner specified in the contracts.   In eight of these contracts was the following provision:

And it is expressly agreed by and between the parties hereto that the time and times of payment of said sums of money, interest, and taxes as aforesaid is the essence and important part of the contract; and that if any default is made in any of the payments or agreements above-mentioned to be performed by the party of the second part, in consideration of the damage, injury, and expense thereby resulting, or that may be incurred by or to the party of the first part thereby, this agreement shall be void and of no effect, and the party of the second part shall have no claim in law or equity against the party of the first part, nor to the above-mentioned real estate, nor any part thereof; and any claim or interest or right the party of the second part may have had thereunder up to that time by reason hereof, or any payments and improvements made hereunder, shall on all such default cease and determine and become forfeited, without any declaration of forfeiture, re-entry, or any act of the party of the first part.

The others had this stipulation in lieu of the one just quoted:

And said referee hereby agrees to procure the approval

of this sale by the court, and to make and execute to said purchaser a good and sufficient referee's deed and have same approved by the court, and to furnish said purchaser an abstract showing perfect title to said premises. And said referee hereby agrees that in case he shall fail to have this sale approved, and a good and sufficient referee's deed made, executed, and approved and abstract furnished showing perfect title, that he will refund to said purchaser said sum so paid to him, and neither party shall have any claim upon the other.

None of the land covered by these contracts was in Dallas county, and it does not appear where the owners thereof resided January 1, 1906. Five of these contracts were not approved by the court until after January 1, 1906, but the others were approved during the year 1905. These contracts were all carried out, and deeds made pursuant thereto by the referee in every case save one, and it does not appear what was done under it. What is known as the A. E. Olson contract was fully performed by the purchaser before January 1, 1906, and Leary, one of the purchasers, paid the amount due under his contract on the day the same was approved by the court. The referee received the money thereon December 30, 1905, and delivered the deed January 2, 1906.

Two primary questions arise upon this appeal as follows: (1) Are the contracts such as that, had they been made by an individual in his own name, they would have been subject to assessment for taxation? (2) Are they or 1. TAXATION: land contracts. any of them assessable in the hands of the referee? It is said that the contracts involved are mere options, and not contracts of purchase, and *In re Shields Bros.*, 134 Iowa, 559, is cited as an authority for the proposition. That case does not so hold, and is clearly distinguishable in its facts from the one in hand. No evidence was introduced tending to show that these contracts were intended as mere options. We have no doubt that after the approval of the court each and all of these contracts could

have been enforced against the purchasers by proper action in court. Where one holds an enforceable contract for the sale of land, he has such a credit as is subject to taxation. *Clark v. Horn,* 122 Iowa, 375; *Cross v. Snakenberg,* 126 Iowa, 636; *Perrine v. Jacobs,* 64 Iowa, 79. *Schoonover v. Petcina,* 126 Iowa, 261, is not in point. Had the contracts been made by an individual in his own right, they would undoubtedly have been assessable.

II.   The next question is much more difficult of satisfactory solution. Boyd was a referee with powers already mentioned. He was commissioned to sell the land as a referee, and, in fact, had no title to, right, or interest in the lands sold. He was not a receiver of the property, nor was he a trustee thereof. He was simply an officer of court appointed for the purpose of selling or making contracts for the sale of the land and to divide the proceeds among the owners. Were these land contracts assessable to him as such referee? Appellant relies primarily upon the fundamental principle that taxation is the rule and exemption from taxation the exception as announced not only in our own, but in many other cases, as for example, in *Trustees v. State,* 46 Iowa, 275, and *Ft. Des Moines Lodge v. County,* 56 Iowa, 34; while appellee says with equal confidence that there can be no taxation except as authorized by statutory or constitutional provision, citing *C., M. & St. P. R. R. v. Phillips,* 111 Iowa, 383; *Tallman v. Treasurer,* 12 Iowa, 531. There is no real conflict in these rules. Of course, no property can be taxed until the lawmaking power authorizes and requires it to be done. But, when property in general is made subject to taxation as it is by sections 1303 and 1308 of our Code, he who would claim an exemption must be able to point to a statute or some rule of law which gives him the right. However, an agent or representative of another is not personally liable to taxation unless there be a statute creating such liability. Appellant's counsel rely upon sections 1309,

2. SAME: contracts by referee in partition.

1312, 1314, 1316, 1320, and 1350 of the Code as authorizing an assessment of the property against the referee.    But in our opinion none of them do so.    Section 1309 simply defines credits.    Section 1312 provides that every inhabitant of the State shall list for the assessor all property subject to taxation of which he is owner or has the control or management in the manner therein directed.    That is to say, the property of one under disability, by the person in charge, of a married woman by herself or husband, of a beneficiary for whom property is held in trust by the trustee, the personal property of a decedent by the executor or administrator, or, if there be none, by any person interested therein, etc.    Section 1314 provides that assignees authorized to sell and persons having in their possession property belonging to another, subject to taxation in the assessment district where said property is found when the owner of the goods does not reside in the county, are, for the purposes of taxation, to be deemed the owners of the property in their possession.    Section 1316 provides that any person required to list property shall do so in the same county in which he would do so were it his own.    Section 1320 makes an agent holding credits with a view to investing, loaning, or in any other manner using or holding the same for pecuniary profit for himself or the owner personally liable for the tax on the same.    Section 1350 provides that personal property shall be listed each year in the name of the owner thereof on the 1st day of January.    These are the only sections relied upon, and the only ones we can find which have any bearing upon the case; and it is manifest that, if there be any authority for taxing the credits to the referee, it must be either section 1312 or section 1314.    Section 1312 authorizes the assessment of the property of a beneficiary held in trust by a trustee and of which he has the control and management, and section 1314 authorizes the assessment of property held by another in the assessment

district where held when the owner does not reside in the county.

If the referee be a trustee holding the property as such for the benefit of another or others, and having control and management thereof, he should list the same with the assessor; and in contemplation of law he is regarded as the owner thereof when the owner does not reside in the county. We do not think that a referee appointed by a court as commissioner to make a sale of property in a partition proceeding is a trustee controlling and managing the property within the meaning of section 1312 of the Code. At most, he is an officer of court controlling and managing the property under its direction. He is not authorized to pay claims unless ordered to do so by the court appointing him, and in whatever he does is subject to the control and direction of the court. A receiver who holds funds awaiting distribution is not regarded as an owner or trustee within the meaning of the law. *Brooks v. Hartford,* 61 Conn. 112 (23 Atl. 697). Indeed, the rule as to receivers seems to be that, unless the title to the property is vested in them, they are not regarded as owners for the purposes of taxation. 1 Cooley on Taxation, 663; Jaggard on Taxation, 275. As referees are omitted from the list of representatives who are liable to taxation, there is every reason for supposing that the Legislature intended to exempt them. In the instant case the referee had nothing but the naked legal title to the contracts made by him, and the proceedings were simply a method of partitioning the land or its proceeds among the owners thereof. His control was limited, and he did not hold the property with a view of investing, loaning, or in any other manner using it for pecuniary profit either for himself or the owner. Should we hold that the property was subject to taxation, it could not be assessed to the trustee for two reasons: (1) There is no showing that the real owners thereof did not reside within the county; and (2) the referee did not hold the same with a view of either profit

to himself or to the owner thereof. Partition proceedings are instituted for the purpose of securing a division of the property among the owners and a sale in such an action is simply a method of dividing up the property. Until the proceeds are paid to the owners of the real estate, these proceeds partake of the nature of the realty; in other words, there is no conversion as a general rule into personalty until the money is actually paid to those who are entitled to it. 3 Pomeroy's Eq., section 1167; 9 Cyc. 844, 845; 7 Am. & Eng. Ency. of Law (2d Ed.); 473-475, and cases cited. These land contracts should for the purpose of taxation be treated as realty and to tax them either to the referee or to the beneficiary would manifestly result in double taxation, which is everywhere inhibited.

Even were this not the rule, it is clear under our statutes that a referee cannot be made personally liable for the taxes, for the reason that he is not holding or using either the property or the contracts with a view to investing, loaning, or in any way deriving any pecuniary profit for himself or the beneficial owners. *German Trust Co. v. Board,* 121 Iowa, 325; *Heinz v. Board,* 121 Iowa, 445. Our conclusions on the whole case find support in *McNeill v. Hagerty,* 51 Ohio St. 255 (37 N. E. 526, 23 L. R. A. 628); *In re Kellinger,* 9 Paige (N. Y.) 62; *Public School v. Trenton,* 30 N. J. Eq. 668; *Brooks v. Hartford, supra.* Appellants rely upon two California cases, to-wit: *San Louis Obispo v. Pettit,* 87 Cal. 499 (25 Pac. 694), and *People v. Lardner,* 30 Cal. 242, in support of their contention. Neither of these cases is controlling. The statute of that State expressly authorized the assessment of property or money in litigation held by the county treasurer, court, county clerk, or receiver to such officials. Moreover, the *San Louis Obispo* case does not decide the point here involved. Much more might be said in favor of the conclusion reached, but the matters already considered seem to be conclusive and point to the final word.

The judgment must be, and it is, *affirmed.*