## CITY OF DALLAS v. TEXAS EMPLOYERS' INS. ASS'N.   (No. 1632.)*

(Court of Civil Appeals of Texas. Amarillo. Nov. 8, 1922. Rehearing Denied Dec. 6, 1922.)

1. Municipal corporations ⬥⟶966(1)—Employers' Insurance Association held governmental agency not subject to municipal taxation.

The Texas Employers' Insurance Association, created by Acts 33d Leg. (1913) c. 179, as amended by Acts 35th Leg. (1917) c. 103 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), to carry out the provisions of the Employers' Liability Act, *held* a governmental agency, in view of Texas Employers' Liability Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246v, 5246vvv, 5246w), and surplus funds in its hands are not subject to an ad valorem tax levied by a city.

2. Statutes ⬥⟶219, 220—Legislative and executive construction of statute entitled to great weight.

While the construction of a statute given by the legislative and executive branches of the government are not controlling, such construction is entitled to great weight by the courts.

On Motion for Rehearing.

3. Municipal corporations ⬥⟶966(1)—Surplus in hands of employers' insurance association held not an "estate" subject to taxation in hands of trustee.

Vernon's Sayles' Ann. Civ. St. 1914, art. 7509, subd. 6, subjecting to taxation the property of a person for whose benefit it is held in trust by the trustee of the estate, contemplates estates created by express trusts, and does not apply to an employers' insurance association holding funds for its subscribers as a governmental agency in the administration of the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91); the surplus in the hands of such association not constituting an "estate" within the statute.

⬥⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted January 24, 1923.

4. **Municipal corporations** ⬤⟹966(1)—**Employers' insurance association held not "owner" of surplus funds in its hands.**

An employers' insurance association constituting a governmental agency for the administration of the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) is not an "owner" of surplus funds held by it so as to be subject to taxation under Vernon's Sayles' Ann. Civ. St. 1914, art. 7509, subd. 1.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Owner.]

5. **Municipal corporations** ⬤⟹966(1)—**Surplus in hands of employers' insurance association held not taxable as being held by agent.**

Surplus funds in the hands of an employers' insurance association forming a state agency for the administration of the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) held not controlled by the association as agent, under Vernon's Sayles' Ann. Civ. St. 1914, art. 7509, subd. 2, so as to be taxable in the hands of the association on that ground.

6. **Municipal corporations** ⬤⟹966(1)—**Surplus in hands of employers' insurance association held taxable as property of subscribers to association.**

A surplus of funds in the hands of the Texas Employers' Insurance Association, which is a governmental agency for the administration of the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) is subject to taxation in the hands and as the property of the subscribers to the association as the real owners, under Vernon's Sayles' Ann. Civ. St. 1914, art. 7509, subd. 1.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the City of Dallas against the Texas Employers' Insurance Association. Judgment for defendant and plaintiff appeals. Affirmed.

Allen Charlton and Carl B. Callaway, both of Dallas, for appellant.
Homer Mitchell, of Dallas, for appellee.

HALL, J. The city of Dallas brought this suit against the appellee for ad valorem taxes alleged to be due for the years 1915, 1916, and for penalties and interest on the amount of taxes and for foreclosure of its tax lien. The taxes were assessed against the surplus, less the reserve in the hands of the appellee according to the rule prescribed for certain domestic insurance companies. The appellee association defended upon the grounds: (1) That it was a public agency, created by legislative enactment, carrying out the terms of what is known as the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), and as a governmental state agency its funds were not subject to taxation; (2) that its domicile was in the city of Austin, Tex.; that

the situs of its property was in such city; that its property was all personal, and, if subject to taxation at all, could only be taxed in Travis county. Appellee further set out the terms of the Acts of the Thirty-Third Legislature (chapter 179), and the amendment thereto by the Thirty-Fifth Legislature (chapter 103), alleging that the various steps and requirements of said acts had been complied with; that the funds of the association so illegally sought to be taxed by the said city are funds arising under and wholly derived from the operation of its powers in the exercise of public functions; that the same are indispensable for the proper and efficient operation of its public functions; that if the illegal charge of the appellant should be held valid against appellee, it would greatly hinder, obstruct, impede, and embarrass appellee in the proper operation and conduct of its public affairs and destroy its powers and efficiency as an agency for the public good. In answer to this contention appellant city replied that the property assessed was held as a surplus, subject to be divided among private persons, and that the same was not public property used for public purposes, and was not used exclusively for the public benefit, and was subject to taxation under the Constitution of Texas, and could not be exempted from taxation under the terms of the Constitution; that the said association was a private corporation, engaged in the insurance business, and was not a public agency; that, even if the Constitution of Texas exempted the property of all public agencies from taxation, said property was expressly taxable under the organic laws of Texas and under the statutes; that the appellee had its home office, its domicile, and its principal office at Dallas; that all of its business was transacted in and from the city of Dallas; and that the property assessed was actually situated in such city when assessed. The trial was before the court without a jury, and resulted in a judgment in favor of appellee, holding that the association was a governmental agency, and that its property was not subject to taxation. The trial court further held, however, that if its property was subject to taxation, the situs was in the city of Dallas. To this part of the court's judgment the appellee presents and urges a cross-assignment. The court's findings and conclusions are as follows:

"I find that the Texas Employers' Insurance Association was created and organized by virtue of an act of the Legislature, passed by the Thirty-Third Legislature, and was thereafter amended by the Thirty-Fifth Legislature; that the act became effective, creating the association September 1, 1913; that the act provides for the appointment by the Governor of a board of directors of said association, consisting of 12 members, who serve for a term of

one year and until their successors are elected. I find that pursuant to the act, the Governor appointed said board of directors. I further find in accordance with the terms of the act there was appropriated by the state Legislature at one time the sum of $5,000, and at another time the amount of $3,500 of the state's funds was appropriated by the Governor of Texas to the association for the purpose of carrying out the provisions of the act. I further find that all the provisions of the act were duly carried out, and that the association was duly and regularly acting under the provisions of the act at the time and during the years the city of Dallas, plaintiff, sought to impose the taxes sued upon, to wit, for the years 1915 and 1916. I further find that the funds and moneys sought to be taxed were derived from and arose out of the operation of said association in carrying out the purposes of said act, and were in its possession, and did not arise otherwise. I further find that said funds or moneys are necessary and indispensable for the uses of the association in carrying out the terms of the said act, and as conducted under the terms of the said act is a public agency of the state, and that said funds sought to be taxed are necessary for the proper and efficient operation of its public functions, and that the taxation of same would operate to hinder, obstruct, and impede the proper operation and discharge of its public function. I further find that the act creating the association does not provide for any detailed method of keeping its books and funds, and that for the purpose of convenience the officers of the association are keeping its funds after the manner of private insurance companies. I further find in accordance with the act the rates of premiums for all such insurance are first proposed by the association to the Insurance Commissioner, and, when approved by him, are the only rates allowed to be charged by other companies under the act. I further find that the association provides rules for the prevention of accidents on the premises of all subscribers of all companies, and enforces the same by appropriate penalties.

"(2) I find in accordance with the terms of the act the board of directors of the association appointed by the Governor duly passed a by-law, providing that the home office of the association should be located and domiciled at Austin, Travis county, Tex. I find that the association transacts its corporate business in accordance with the provisions of said by-laws at its home office in Austin, Travis county, Tex., by meeting and electing its officers annually and deciding the policy of the association, and was so conducting its business during the years 1915 and 1916 when the tax hereinafter mentioned was sought to be levied by the city of Dallas. I further find that the said association has subsidiary offices throughout the state of Texas at various points, and that its principal office is located, and was located during the years 1915 and 1916, in the city of Dallas, Dallas county, Tex., from which its principal business was conducted. I find that the association keeps on deposit at its various subsidiary offices located throughout the state certain portions of its funds for use, and I find that the funds herein sought to be taxed by the city of Dallas were maintained by the said association during the said years 1915 and 1916, by its principal subsidiary office located in the city of Dallas, Dallas county, Tex. I find that the funds so located in the city of Dallas and sought to be taxed by the city of Dallas were in the city of Dallas on deposit to meet the demands and emergencies required by the act to be done by the association. I find that the association did not voluntarily render said funds to the tax assessor for assessment, but, on the contrary, the said tax assessor made his own assessment of them for said years as hereinafter set out. I find that the association does not render any taxes to the state on its fund or any subdivision thereof, and has not paid any taxes to the state for the reason that the officers of the state recognize the funds of the association are not amenable to taxation. I further find that the officers of the state and the officers of the association co-ordinate in carrying out the functions of the agency. I further find that if said fund is taxable its situs for taxation was at Dallas, Tex.

"(3) I find that the city of Dallas, a municipal corporation, during the years 1915 and 1916, as shown by their pleading, assessed the funds of the association in accordance with and after the plan prescribed by article 4764 of the Statutes, providing for the taxation of domestic insurance companies, that pursuant to said article of the statutes the city tax assessor assessed the funds of the said association for the year 1915 and for the year 1916, respectively, in the following manner:

For the year 1915:

| | |
|---|---:|
| The total assets of said association of the value of | $59,347 78 |
| Less the reserve held by said association of the value of | 41,234 42 |
| Less the net assets of said association | 18,113 36 |
| Less 40 per centum | 7,245 34 |
| Leaving assessed value of such assets | $10,868 02 |

For the year 1916:

| | | |
|---|---:|---:|
| Net surplus of said association, consisting of net assets of said association after deducting reserve, of the value of | | $58,986 49 |
| Less bills receivable | $213 74 | |
| Less overdue premiums | 120 86 | 334 60 |
| Leaving net assets of said association | | 58,651 89 |
| Less 40 per centum | | 23,451 89 |
| Leaving assessed value of said assets | | $35,200 00 |

"I find that upon this assessment so made the city of Dallas has a tax imposed against the said association for the years aforesaid amounting to the sum of $1,043.97, including interest and penalties, which sum is due and unpaid.

### "Conclusions of Law.

"I am of the opinion that from the above and foregoing facts the Texas Employers' Insurance Association, defendant herein, and its funds sought to be taxed by the city of Dallas, was not at the time and for the years named subject to said tax. At this time in my judgment the association was and is a state public agency, carrying out the duties and obligations imposed upon it by an act of the Legislature and its funds are in a legal sense the funds of the state, being specially employed and devoted to the general and efficient operation of the act. The funds so sought to be taxed are

necessary and indispensable to promote the plan and scheme provided by the Legislature, and the admission of their taxation by the state and its various subdivisions would greatly impede and embarrass the operation of the agency, as well as destroy the economic and high public purpose upon which the plan and scheme is predicated. The association stands in the attitude and is a governmental supervisor of the peculiar class of insurance which is affected by its operation, and as such it originates the rates and prescribed rules and standards of hazards and risks which all other companies must abide by. It is necessary for the successful operation of the act that its funds be not embarrassed or burdened by manifold charges in the way of taxation by the various subdivisions of the state, and, in the absence of specific legislation imposing a tax upon the funds of the association, I am of the opinion that such funds in the hands of the association are not amenable to the tax sought to be charged. The Supreme Court has judicially declared the association to be a public agency of the state, and, in view of such opinion, as well as the law applicable thereto, I hold that the funds sought to be taxed by the city are not subject to such tax, and judgment is accordingly rendered in behalf of the defendant, the Texas Employers' Insurance Association."

The decision of the Supreme Court referred to by the trial judge in the last preceding sentence of his conclusions of law is no doubt that rendered in the case of Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, where Phillips, C. J., discusses at length the constitutionality of the Texas Employers' Liability Act (Acts 33d Leg. c. 179, 1913, pp. 429–438), and now incorporated in V. S. C. S., tit. 77, c. 5, pts. I, II, III, IV, arts. 5246h–5246zzzz. The character and functions and powers of appellee are defined in that opinion as follows (108 Tex. 111, 185 S. W. 562 [10]):

"The insurance association created by the act is not a private corporation, and this part of the act is not violative of the Constitution in its provision that no private corporation shall be formed except by general laws. Some such agency as the insurance association may be deemed as essential to the efficient execution of the act. It was a way of giving effect to the plan as a dependable method of providing the funds necessary for the payment to employees of the compensation the act is designed to afford. The association is very clearly only an agency for the proper administration of this law. It has no functions or powers which it may exercise for any other purpose. It is denominated in the act as a corporation, but that may be regarded as a term of convenience. Calling it a corporation does not make it a private corporation. Its character is to be determined by what it is, and not by its name. Railway v. Board of Directors, 103 Ark. 127, 145 S. W. 892; Beach v. Leahy, 11 Kan. 23."

This, of course, is an express declaration that appellee is not a private corporation, but simply an arm or agency of the state for the purpose of collecting only such funds as are necessary for the payment to employees of the compensation to which they may be entitled under the act. When so considered it is not strictly speaking an insurance company. In creating appellee such an agency, the Legislature has fashioned it upon the general plan of a mutual benefit association, from which it was not contemplated that any one should derive any profits as such. It is the policy of this and other states to exempt the funds of such organization from taxation. V. S. C. S. art. 4856; Commonwealth v. Phila. M. M. F. Ins. Co., 88 Atl. 943; Appeal of Mill Owners' Mut. Fire Ins. Co., 188 Iowa, 664, 176 N. W. 686; State v. M. F. M. I. Co., 145 Minn. 231, 176 N. W. 756. That it was the intent of the Legislature that neither the appellee as an organization nor any subscriber thereto should ever derive any profits from it is made plain by that part of the act which provides for the collection and distribution of its funds. Article 5246v provides that the board of directors shall divide the subscribers into groups in accordance with the nature of the business and the degree of hazard incident thereto, and that subscribers within each group shall annually pay in cash such premiums as may be required to pay the compensation herein provided for the injuries which may occur in that year. The next article provides that the association may, in its by-laws and policies, fix the mutual contingent liability of the several subscribers for the payment of losses and expenses, not provided for by its cash fund, and as a further evidence of the intent of the Legislature that it should not be an organization from which any profits might accrue to any one, and that it should handle only such funds as are necessary for paying the actual losses and expenses incident to the enforcement of the act itself, it is provided by article 5246vvv that, if the association at any time is not possessed of cash funds above its insured premiums sufficient for the payment of incurred losses and expenses, it shall make an assessment for the amount needed to pay such losses and expenses, such assessment to be levied upon the several subscribers in proportion to their several liability. Article 5246w provides that the board of directors may from time to time fix the amount to be paid as dividends upon the policy's expiring during each year, after retaining a sum sufficient to pay all compensation which may be payable on account of injuries sustained and expense incurred, and further provides that all of the funds of the association and the contingent liability of all the subscribers shall be available for the payment of any approved claim for compensation against the association. While the amount which this article requires to be refunded to the several subscribers is called a dividend, it is clearly not so in the strict sense, but is simply a requirement that all surplus money

in the hands of the association, over and above the amount required to properly administer and carry out the purpose of the act, shall be returned to the subscribers, thus demonstrating that the Legislature intended by the act to reduce the expenses incident to injuries resulting in industrial pursuits to actual cost, freed of any profits to any person or association of persons.

[1] In the light of these provisions we conclude that the appellee is in the strictest sense a governmental agency, and comes within the general rule expressed in Penick v. Foster, 129 Ga. 217, 58 S. E. 773, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346, as follows:

"The general rule is that public property and the various instrumentalities of government are not subject to taxation. This immunity rests upon the most fundamental principles of government, being necessary in order that the functions of government be not unduly impeded, and that the government be not forced into the inconsistency of taxing itself in order to raise money to pay over to itself."

The act does not provide that any reserve or surplus fund may be invested or loaned to its policy holders, stockholders, or other persons, as is usually the case with co-operative or mutual life insurance companies, such as is provided for in title 71, c. 6, V. S. C. S. As we understand the act under consideration, all of the funds coming into the hands of appellee over and above that required for the payment of claims and expenses is clearly the property of the subscribers, and is held by appellee simply as a trustee, to be refunded to them in accordance with the above-quoted provisions of the act. So construed, the act does not invest the appellee as owner in its own right with any property whatever. Without express authority from the legislative body which created it, appellee cannot legally own any such property. The fact that it has not been authorized to own property we think accounts for the failure of the Legislature to levy any tax upon the funds which it is authorized to collect.

The power of a state to tax its own property and instrumentalities seems to be conceded by a long line of authorities, but they almost uniformly hold that before such agencies can be taxed the intent to do so must be clearly expressed. This, however, is a question with which we are not concerned in the instant case. No effort has been made by the state to levy a tax upon appellee. The issue presented here is the right of a municipality of the state to tax an agency or instrumentality which the state has created for the purpose of making effective and administering a part of its laws.

It is a significant fact that the Employers' Liability Act makes no provision for taxing appellee, or any part of the funds in its hands, and the record shows that no tax has ever been assessed against it by the author-

ities of the state or of any county. It is said in Tolleson v. Rogan, 96 Tex. 432, 73 S. W. 524, by the Supreme Court, in discussing the contemporaneous construction of statutes by officers whose duty it was to construe and enforce them:

"The great weight which, from necessity, courts must often give to the contemporaneous construction put upon laws by other departments and officers to whom is committed every practical administration, is so well understood that it need not be dwelt upon. Sound public policy requires the solving of all mere doubts in favor of construction so made and uniformly acted upon."

[2] While the construction given by the legislative and executive branches of the government to a statute are not controlling, such construction is entitled to great weight by the courts when called upon to construe them. Slaughter v. Yoakum County, 109 Tex. 42, 195 S. W. 1129; State v. Houston Oil Co. (Tex. Civ. App.) 194 S. W. 422. Appellant does not claim to have express authority from the Legislature to levy and collect the taxes sought to be recovered in this suit.

"It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property unless the power be plainly and unmistakably conferred. It has indeed often been said that it must be specifically granted in terms, but all courts agree that the authority must be given, either in express words or by necessary or unmistakable implication, and that it cannot be collected by doubtful inferences from other powers or powers relating to other subjects, nor can it be deducted from any consideration of convenience or advantage. * * * It is important to bear in mind that the authority to municipalities to impose burdens of any character upon persons or property is wholly statutory, and as its exercise may result in a divestiture and transfer of property it must be clearly given and strictly pursued." 4 Municipal Corporations, Dillon (5th Ed.) § 1377.

"In construing constitutional provisions, either expressly or by implication, requiring the taxation of all property within the territorial limits of the taxing authority, it has been declared that these provisions are not to be given a meaning which will require the taxing of public property or of any of the lawful instrumentalities of government, and it has been held that municipal bonds, issued as evidence of a loan made to a city, are instrumentalities of the government which creates the municipal corporation and that these constitutional provisions do not require that the taxes be levied thereon as a part of the property which must of necessity be taxed." Id. § 399.

"In the construction of the grant of any power to tax made by the state to one of its municipalities, the rule accepted by all the authorities is that it should be with strictness. If the authority of the municipality to tax is doubtful, the doubt must always be resolved against the tax. The reasonable presumption is held to be that the state has granted in clear and unmistakable terms all that it has intend-

ed to grant, and whatever authority the municipal officers assume to exercise they must be able to show a warrant for it in the words of the grant. As said by that eminent jurist, teacher, and text-writer, Judge Cooley, the rule of strict construction of statutes as to the purposes for which municipalities may levy taxes limits municipalities in the levy of taxes strictly to the ordinary purposes for which such municipalities are accustomed to make levies. The customary grant does not go a step beyond this, because it cannot be supposed. that in giving the customary authority the Legislature had any but the usual and ordinary objects of taxation in view. * * * The mischief of a strict construction is easily obviated by the Legislature, but the mischief of a liberal construction may be irremedial before it can be reached." Cooley on Taxation (3d Ed.) p. 469.

"It is axiomatic that the power of taxation is an incident of sovereignty, and that all questions in regard to it address themselves to the discretion of the legislative department, whose conclusions within the limits of the Constitution are final. It must determine all questions of state, county, district, and municipal necessity and policy in ordering or authorizing a tax and in apportioning it. Counties and other municipalities and districts have no inherent power to tax. Brown v. Graham, 58 Tex. 254; Carlile v. Eldridge, 1 White & W. Civ. Cas. Ct. App. § 989; Cooley on Taxation, 209. The authorities are practically uniform in declaring that property owned by the United States, a state or a municipality for public use, and_in general the instrumentalities and agencies of such governments, are not subject to be taxed unless so provided by positive legislation." 4 Dillon, Municipal Corporations (5th Ed.) 1396, 1400; Cooley on Taxation, pp. 130, 131; 37 Cyc. 865; Richmond County Academy v. Augusta, 90 Ga. 634, 17 S. E. 61, 20 L. R. A. 151.

Having concluded that the appellee being a governmental agency is not subject to taxation by a municipality, it is unnecessary for us to decide the question of situs, and, without passing upon that part of the court's judgment, it is affirmed.

### On Motion for Rehearing.

[3] In its motion appellant concedes that we probably were correct in holding that that portion of the funds in the hands of appellee association, which the statute required to be collected for use in the payment of expenses, claims for damages, and judgments, is not subject to taxation, but vigorously insists that all money over and above that required for such purposes is the property of the several subscribers, as we have held, and that as such it is held by appellee as a trustee in its technical sense, and, further, that under the law trust funds are taxable while in the hands of such trustee. We grant that under V. S. C. S. art. 7509, subd. 6, "the property of a person for whose benefit it is held in trust by the trustee of the estate" is taxable while so held for the cestui que trust";

but the fund sought to be taxed in this case is not an "estate" in the sense in which it is used in that subdivision of the article, and is not taxable while so held. We think that subdivision of the article contemplates estates created by express trusts. The appellee is not a trustee as that term is used in said subdivision, because it cannot and does not hold any "estate" as such in any surplus in its hands. It simply holds any such surplus as a naked trustee. This is clear from the language of the various provisions of the statute under which appellee was created, and which provide that it is entitled to have and hold only such funds of its subscribers as may be necessary in carrying out the purposes of the act. Because of the uncertain number of claims and the amount required to be on hand for their payment, in the very nature of things such surplus is variable and contingent. If at any period appellee should have more money than it has used in the payment of expenses and claims, then as to such surplus there is created a passive, dry, or simple trust, which "is one which requires the performance of no duty by the trustee to carry out the trust, but by force of which the mere legal title rests in the trustee." 3 Bouv. Law Dict. 3320.

[4, 5] In our opinion by the provisions of the statute quoted in the original opinion under the authority of which appellee was organized, it is not contemplated that the association should ever hold as an active trustee any money over and above the sum necessary for the payment of expenses and claims, and that any surplus which may by chance be on hand is to be returned from time to time as "dividends" to the subscribers. The association is clearly not the "owner" in the sense in which the word is used in Vernon's Sayles' Ann. Civ. St., 7509, subdivision 1, nor is such fund "controlled by" appellee "as agent" under subdivision 2 of that article, nor is it entitled to either the possession or control of any part of it as against the subscribers. It is said in 37 Cyc. 793:

"Real or personal property held under a testamentary or other trust is ordinarily taxable to the trustee as he has possession and control of it."

The cases cited in support of this rule are those in which express trusts existed, because, as said, in the instant case, the appellee, under the statute, is not supposed to have in its possession or under its control any of its subscriber's money as a surplus. It cannot be held to be a trustee of any such fund in a technical sense. It holds all such surplus as a naked trustee under a passive trust, with the sole duty of returning it promptly to the real owners. Quoting further from the above paragraph of Cyc.:

"But exceptions to this rule are sometimes found, the property being made assessable di-

rectly to the beneficiary and particularly in cases where the trust is not of the kind described in the tax laws or where the person having control of the property is not vested with the rights and duties of a trustee in the true sense of the word, or where it is a mere naked or dry trust."

We find this rule to be directly applicable to this case. Dallas County v. Boyd, 138 Iowa, 583, 116 N. W. 700, 17 L. R. A. (N. S.) 1220, is cited in the note as sustaining the above quotation from the text. That was a suit for partition amongst the heirs of E. Cardell, deceased. Boyd was appointed referee to sell the land and divide the proceeds amongst the heirs. The court held that Boyd, as referee, appointed by the court to sell the land and partition the proceeds, held property which was not within the meaning of a statute requiring the listing of property for taxation by a trustee of property held in trust. Reference to the case shows that the statutes of Iowa, discussed in the course of the opinion, contain practically the same provisions which we find in V. S. C. S. art. 7509. We quote in part from the opinion as follows:

"Boyd was a referee with powers already mentioned. He was commissioned to sell the land as a referee, and, in fact, had no title to, right, or interest in the lands sold. He was not a receiver of the property, nor was he a trustee thereof. He was simply an officer of the court appointed for the purpose of selling or making contracts for the sale of the land and to divide the proceeds among the owners. Were these land contracts assessable to him as such referee? * * * However, an agent or representative of another is not personally liable to taxation unless there be a statute creating such liability. * * * If the referee be a trustee holding the property as such for the benefit of another or others, and having control and management thereof, he should list the same with the assessor; and in contemplation of law he is regarded as the owner thereof when the owner does not reside in the county. We do not think that a referee appointed by a court as commissioner to make a sale of property in a partition proceeding is a trustee controlling and managing property within the meaning of section 1312 of the Code. At most, he is an officer of court, controlling and managing the property under its direction. He is not authorized to pay claims unless ordered to do so by the court appointing him, and in whatever he does is subject to the control and direction of the court. A receiver who holds funds awaiting distribution is not regarded as an owner or trustee within the meaning of the law. Brooks v. Hartford, 61 Conn. 112, 23 Atl. 697. Indeed, the rule as to receivers seems to be that, unless the title to the property is vested in them, they are not regarded as owners for the purposes of taxation. 1 Cooley on Taxation, 663; Jaggard on Taxation, 275. As referees are omitted from the list of representatives who are liable to taxation, there is every reason for supposing that the Legislature intended to exempt them. In the instant case, the referee had nothing but the naked legal title to the contracts made by him, and the proceedings were simply a method of partitioning the land or its proceeds among the owners thereof. His control was limited, and he did not hold the property with a view of investing, loaning, or in any other manner using it for the pecuniary profit either for himself or the owner. Should we hold that the property was subject to taxation, it could not be assessed to the trustee for two reasons: (1) There is no showing that the real owners thereof did not reside within the county; and (2) the referee did not hold the same with a view of either profit to himself or to the owner thereof."

[6] We think the instant case is a much stronger case than the Boyd Case. In the Boyd Case he was vested with the legal title for a definite purpose. In the instant case, if appellee had any title to the fund sought to be taxed, it was for the purpose of paying claims and expense only. Boyd had the right of possession, control, and management under the orders of the court. In the instant case, after the payment of claims appellee had neither the right to hold, control, or manage the surplus in its hands. It was absolutely and without qualification the property of the several subscribers, and could only be assessed to them under the above-quoted article of the statute. Boyd, as referee, held the property as against all claimants, subject to the orders of the court. As against the subscribers the appellee could not hold any of the surplus upon any valid claim. The case of St. Louis v. Wenneker, 145 Mo. 230, 47 S. W. 105, 68 Am. St. Rep. 561, cited in the motion, is not in point, because the will of Mullanphy, deceased, gave the properties sought to be taxed to the city of St. Louis "in trust to be and constitute a fund to furnish relief to all poor immigrants and travelers coming to St. Louis on their way bona fide to settle in the West." It will be seen that this provision is an express trust, vesting in the city as an active trustee the legal title to the property, with the absolute right of possession and control of the fund for the purpose of executing the trust. If we should hold that the surplus was assessable under the general laws while in the hands of appellee, it would nevertheless, under subdivision 1, of article 7509, be again subject to taxation, in the hands and as the property of the real owners.

The motion is overruled.