### COFFMAN *v.* ST. FRANCIS DRAINAGE DISTRICT.

Opinion delivered May 13, 1907.

1. DRAINAGE DISTRICT—LEGISLATIVE ASSESSMENT—CONFISCATION OF PROPERTY.—While the Legislature, in creating a drainage district, may provide what lands shall be assessed for the improvement, and the extent of such assessment, the courts will interfere where the act of the Legislature is such an arbitrary abuse of the taxing power as would amount to a confiscation of property without benefit. (Page 57.)

2. SAME—EXTENT OF RELIEF.—Under a complaint against a drainage district which alleged that the taxing of plaintiff's land was without benefit to and amounted to a confiscation of such land, the relief afforded must be limited to restraining assessments upon plaintiff's lands, and cannot go to the extent of restraining the public improvement and the bonding of the district, as the creation of the district and its bonding are within the legislative power. (Page 61.)

Appeal from Greene Chancery Court; *E. D. Robertson,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

The General Assembly of 1905 created a levee and drainage district, called the St. Francis Drainage District, in Clay and Greene counties, the purpose of said district being to maintain the levee then in existence on the west shore of the St. Francis River, and to construct such other levees on said shore line as in the opinion of the board of directors should be deemed proper and necessary, and for the purpose of constructing a drain or ditch in said territory, which was specifically designated. A board of directors was created for carrying out said

public work, and corporate powers were given to said body.

For the purpose of building, constructing, repairing and maintaining the levees and drains provided for, the Legislature assessed each acre of land "a betterment of five cents per acre; upon each mile of main line of railroad a betterment of fifty dollars per mile; upon each mile of side track a betterment of ten dollars per mile," etc. And provided that such assessments should continue annually until the objects of the acts were completed, or until the board of directors should deem it necessary to assess otherwise, in which event they should have the power to assess property annually for a tax thereon, which should be five per cent. upon the betterments estimated to accrue from the drainage provided for and for the protection given against overflow from the river, but said assessments should not exceed ten cents per acre on the lands and one hundred dollars per mile on the railroads; and further power was given to the board to elect assessors who should make the assessments, and provisions were made for hearing after due notice before said board of assessors. Acts of 1905, c. 171, p. 229.

Coffman, Thompson, Donaldson and others, landowners within said district, brought a complaint in equity to enjoin the district from issuing the bonds or any certificate of indebtedness, from selling the same in such manner as to affect the interests of their property, and to enjoin it from letting any contract of any nature or character whatsoever to cut any ditch or build any levee in said drainage district which would affect their lands. The principal part of the complaint is as follows:

"That, if the said ditch is dug or levee built at the point sought to be dug or built, plaintiffs will suffer great and irreparable injury and damage in this: The water that would flow through said ditch would empty into Bagwell's Lake, a lake and mud slough which have no outlet, and as consequence thereof said lake and mud slough, which are virtually without any channels, would overflow the whole country for miles around, inundating farms heretofore free from overflowing, and thereby render said farms unfit for cultivation and worthless as farms; that the building of said levee would in like manner destroy said farms by causing the water to seek an outlet through creeks, sloughs and bayous, and thus cause them to overflow

plaintiff's lands, thereby rendering them unfit for cultivation as aforesaid.

"Plaintiffs and those who have a general common interest with them in this suit state that they and those from whom they deraigned title to said lands selected and settled said lands years ago by reason of being free from overflow, or by their natural lay of the country where their lands were situated they could be easily drained by turning the water into the channel of the creeks and other watercourses which have an outlet to overflow; that, by reason of said lands being so situated, they have established homes thereon, cleared up a large portion of said lands, and placed them in cultivation, which improvements, uses and rentals of said lands are of great value; that a greater portion of said lands situated in the drainage district are and have been many years prior to first settlement in said district low, flat islands, and subject to overflow, and water covers them most of the year, they are worthless for tillage; that the drainage or leveeing of said last-mentioned lands would be of no benefit, directly or indirectly, to these plaintiffs' lands or those having a general or common interest with them in this suit; but, on the contrary, if said ditch is cut or levee built, the cost of which is to be borne by these plaintiffs and others as provided in the above-named act, they will be taxed without any benefit to be derived thereby to them; not only that, but their lands will be valueless and unfit for cultivation as aforesaid."

The complaint was met by demurrer, which was sustained, and the plaintiffs, resting upon it, have appealed.

*W. W. Bandy* and *W. S. Luna,* for appellants.

1. The act is unconstitutional and void, because it attempts to appropriate private property for public use without just compensation. Art. 2, § 22, Const.; 13 Ark. 207; 15 Ark. 43; 31 Ark. 494; 49 Ark. 167; *id.* 492.

2. It is also unconstitutional because it deprives the citizen of his property without due process of law. Art. 2, § 8, Const.; 14th Amendment U. S. Const.; Cooley on Tax. (2 Ed.), 50; *id.* 364; *id.* 606, 646; 96 U. S. 97; 125 U. S. 345; 36 Fed. 891; 39 Fed. 891; 164 U. S. 112; 95 U. S. 37; 92 U. S. 482; 111 U. S. 707; 115 U. S. 335; 13 Fed. 751; 122 U. S. 164;

181 U. S. 327; 172 U. S. 269; 170 U. S. 55; 21 Ark. 40; 48 Ark. 370; 49 Ark. 518; 47 Ark. 431; 72 Ark. 119; 52 Ark. 529; 33 Kan. 156; 125 U. S. 365; 92 Va. 561; 69 U. S. 68; 2 Dillon, Mun. Cor. (4 Ed.), 934, § 761; 2 Cooley on Tax. (3 Ed.) 1208-9; *id.* 1254 *et seq.*

*Moore, Spence & Dudley* and *Jno. B. Jones,* for appellee.

The whole subject of the formation of taxing districts belongs to the Legislature. It has full and complete power of legislation except as prohibited by the Constitution of the State or the Constitution of the United States. 72 Ark. 119; 2 Cooley on Tax. (3 Ed.) 1208. It has the power to fix the tax or to make what appellants call a flat rate. 72 Ark. 119, quoting from 125 U. S. 345. See also 14 La. Ann. 498; 2 Cooley on Tax. (3 Ed.) 1226; 27 Mo. 495; 21 Ark. 40; 13 Ark. 752. *Norwood* v. *Baker,* 172 U. S. 269, if still the doctrine of that court could be no authority upon the power of the Legislature to establish drainage districts and levy a tax. But that case has been departed from. 181 U. S. 399; *id.* 324; *id.* 371. The act is not invalid because of not providing for an appeal. Cooley on Tax. (3 Ed.) 1393; 52 Ark. 529.

HILL, C. J., (after stating the facts.) In *Parsons* v. *District of Columbia,* 170 U. S. 45, the following excerpt from Cooley on Taxation was approved by the court:.

"1. The major part of the cost of a local work is sometimes collected by general tax, while a smaller portion is levied upon the estates specially benefited.

"2. The major part is sometimes assessed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits.

"3. The whole cost in other cases is levied on lands in the immediate vicinity of the work.

"In a constitutional point of view, either of these methods is admissible, and one may be sometimes just, and another at other times. In other cases, it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and, like all legislative questions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just

and equal than it would be were the Legislature required to levy it by one inflexible and arbitrary rule."

In the same case, Dillon on Municipal Corporations was likewise quoted, as follows:

"The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. * * * Whether the expense of making such improvements shall be paid out of the general treasury or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency."

Following this decision came that of *Norwood v. Baker,* 172 U. S. 269, which seemed to many legal minds in conflict with *Parsons v. District of Columbia, supra.* So much of *Norwood v. Baker* as is pertinent to the issue here was quoted approvingly by this court in *St. Louis Southwestern Ry. Co. v. Red River Levee District No. 1,* 81 Ark. 562, as follows:

"But the power of the Legislature in these matters is not unlimited. There is a point beyond which the legislative department, even when exerting the power of taxation, may not go consistently with the citizen's right of property. As already indicated, the principle underlying special assessments to meet the cost of public improvement is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired if it were established, as a rule of constitutional law, that the impositions by the Legislature upon particular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvement, could not be questioned by him in the courts of the country."

Subsequently, the Supreme Court of the United States, in a series of cases beginning with *French v. Barber Asphalt Co.,* 181 U. S. 324, has apparently modified to a material extent much

that was said in *Norwood* v. *Baker*; but the court believes that that the excerpt above quoted still meets with the approval of that tribunal. The rule laid down by the Supreme Court of the United States is correctly summed up by a recent writer as follows:

"In exercising its power, the Legislature may either act directly, determining the area benefited and the rate of apportionment absolutely; or it may delegate to local authorities the power to decide as to the necessity of the improvement, the area which will be benefited, and the rule of apportionment, and this delegation may cover all or any of these points. The Federal Supreme Court holds that the Legislature, acting directly, may determine the district benefited by a public improvement and lay down an absolute rule as to the apportionment of the expense among the parcels of land included. When this course is adopted, the act of the Legislature must be deemed conclusive alike of the question of the necessity of the work and of the benefits as against the abutting property, and to open such questions to review by the courts upon the petition of any and every property holder would create endless confusion." McGehee on Due Process of Law, 248.

But this must be taken with the exception indicated in *Norwood* v. *Baker*, which is stated in more recent cases to be that the courts will afford relief where there is "an abuse of the law, an act of confiscation, and not a valid exercise of the taxing power." *French* v. *Barber Asphalt Co., supra.*

Again it is stated as follows: "Special facts, showing an abuse or disregard of the law, resulting in an actual deprivation of property, may give grounds for applying for relief to a court of equity, and this was thought by a majority of the court to have been the case in *Norwood* v. *Baker.*" *Wight* v. *Davidson,* 181 U. S. 371.

Again the court said, in reference to the 14th Amendment in these matters:

"That that amendment legitimately operates to extend to the citizens and residents of the State the same protection against arbitrary State legislation affecting life, liberty and property as is afforded by the Fifth Amendment against similar legislation by Congress, and that the Federal courts ought not to in-

terfere when what is complained of is the enforcement of the settled laws of the State applicable to all persons in like circumstances and conditions, but only when there is some abuse of law, amounting to confiscation of property or deprivation of personal rights, as was instanced in the case of *Norwood* v. *Baker*." *Cass Farm Co.* v. *Detroit,* 181 U. S. 396.

Therefore the only question is whether the allegations of this complaint show that the act of the Legislature is such an arbitrary abuse of the taxing power as would amount to a confiscation of plaintiff's property without any benefit whatsoever, and thus bring the case within the doctrine of *Norwood* v. *Baker* as explained in later cases. The complaint is drawn in general terms, and should have been met by a motion to make more specific and certain, if more certainty was desired. But, the demurrer having admitted these general allegations, practically charging confiscation of property, and there being a specific denial of benefit, the court is constrained to believe that it is safer and more consonant to the justice of the case to overrule the demurrer and let a hearing be had as to whether there has been an abuse of the legislative discretion in charging these plaintiffs with the expense of a public improvement which would not benefit them, but injure them, thereby amounting to a confiscation of their property.

Reversed and remanded, with directions to overrule the demurrer.

Mr. Justice WOOD dissents, and thinks the judgments should be affirmed.

### ON REHEARING.

#### Opinion delivered May 25, 1907.

HILL, C. J. Appellee files a motion for the modification of the opinion, but really asks the court to pass broadly upon some questions which it is not necessary, nor proper, to pass upon in order to determine the appeal.

One further point, however, may properly be decided as it is fairly raised, and that is as to the relief to be granted plaintiffs if the allegations of their complaint are proved.

The prayer of the complaint is as follows:

"Wherefore, the premises being seen, the plaintiffs and those who have a general and common interest with them in this suit pray that an injunction or temporary restraining order be issued restraining defendants, its agents, directors, attorneys and servants, from issuing or attempting to issue any bond or bonds or any certificate of indebtedness of any nature or kind whatever, and selling the same or attempting to sell the same that would in anywise affect the interest of these plaintiffs' property as above stated; and that said defendant be enjoined and restrained from letting any contract of any nature or character whatever to cut any ditch or build any levee in said drainage district above described that would in anywise whatever affect plaintiffs' lands situated in above-named drainage district as aforesaid, and that any and all agents, attorneys, directors and persons whomsoever in the service or employ of said defendant in any capacity whatsoever [be enjoined] from doing so, together with all other general, special and proper relief."

This is more than the allegations justify. Should the court find the allegations of the complaint true, the relief must be limited to restraining assessments and taxation upon plaintiffs' lands to pay for the public improvement, and must not go to the extent of restraining the improvement itself and the bonding of the district as provided by the act, because the authorities quoted in the opinion show that the creation of the district (and of course its bonding) is within the legislative power; and the sole judicial question is whether this power operates so arbitrarily against plaintiffs as to amount to a confiscation of their property, to assess and tax their lands for an improvement which does not benefit them, but which injures them.