ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* BOARD OF DIRECTORS OF LEVEE DISTRICT NO. 2
OF JACKSON COUNTY.

Opinion delivered February 5, 1912.

1. LEVEES —CONCLUSIVENESS OF LEGISLATIVE FINDING.—Where the Legislature has determined that a certain area which it has organized into an improvement district will be benefited by the improvement, its judgment is conclusive upon the courts unless there was an arbitrary and manifest abuse of power by the Legislature. (Page 132.)

2. SAME—MUNICIPAL CORPORATION.—A levee district is not a municipal corporation within section 4, art. 12, Const., which provides that no municipal corporation shall be authorized to levy any tax on real property to a greater extent in one year than five mills on the dollar of the assessed valuation of the same. (Page 137.)

3. SAME—SPECIAL PRIVILEGES.—Levee districts are governmental agencies merely and are not "citizens" within art. 2, sec. 18, of the Constitution, which prohibits the Legislature from granting to any citizen privileges which, upon the same terms, shall not equally belong to all citizens. (Page 138.)

4. STATUTES—SUSPENDING OPERATION OF GENERAL LAW.—The act of 1909, c. 229, creating "Levee District No. 2" of Jackson County, is not void within the prohibition of art. 5, sec. 24, Const. 1874, providing that "the operation of a general law shall not be suspended by the Legislature for the benefit of any individual, corporation or association, nor where the courts have jurisdiction to grant the powers or the privileges or the relief asked for." (Page 138.)

5. LEVEES—SPECIAL ACT CONFERRING CORPORATE POWERS.—The act creating the Levee District No. 2 of Jackson County does not infringe upon art. 2, sec. 2, of the Constitution, providing that "the General Assembly shall pass no special act conferring corporate powers, except for charitable, educational, or reformatory purposes, where the corporations created are to be and remain under the patronage and control of the State." (Page 139.)

6. SAME—JURISDICTION OF COUNTY COURTS.—Special acts creating levee districts, with power to build, maintain and repair levees, are not in conflict with art. 7, sec. 28, Const. 1874, conferring upon the county court exclusive original jurisdiction in matters of internal improvement and local concerns. (Page 139.)

7. SAME—MODE OF ASSESSMENT OF RAILROAD PROPERTY.—The act of May 6, 1909 (Acts of 1909, c. 229), creating Levee District No. 2 of Jackson County, provided that the assessment upon the railway track of all railroad companies within the district should be based upon the valuation as appraised by the board of railroad commissioners. . The act of May 12, 1909, creating the Arkansas Tax Commission, provided that the tax commission "herein created shall take over, assume and discharge all the duties of said railroad commission" in regard to the assessment of railroad property. *Held* that it was the duty of the tax commission to assess railroad property, and of the board of directors of the levee district to follow such assessment. (Page 139.)

8. SAME—OBSTRUCTION OF DRAINS.—The act of May 31, 1909, providing that "it shall hereafter be unlawful for any person to obstruct in any manner any natural drain in this State," did not conflict with nor repeal the act of May 6, 1909, creating the Levee District No. 2 of Jackson County. (Page 140.)

9. SAME—VALIDITY OF SPECIAL ACT.—The act of May 6, 1909, providing that each member of the board of directors of Levee District No. 2 of Jackson County must be a land owner in the district whose lands will be enhanced in value by reason of the construction of the levee, does not violate art. 7, sec. 20, of the Constitution which provides that no judge shall sit in the trial of any case in the event of which he may be interested. (Page 141.)

Appeal from Jackson Circuit Court; *Charles Coffin,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, Jas. H. Stevenson, S. D. Campbell* and *F. R. Suits,* for appellant.

1. Where a railway company will not be benefited by the construction of a proposed levee, to compel it to pay assessments therefor would amount to taking its property without due process of law. The benefits derived from such an improvement should be such as are real and substantial, direct and

special. 81 Ark. 564; 172 U. S. 269; 83 Ark. 54; *Id.* 351; 86 Ark. 8; *Id.* 231.

2. The appellant will be damaged by reason of the construction of the proposed levee, for which no compensation has been made or provided.

Even if appellant's roadbed within the levee district will be benefited by the levee, that is not the exclusive test of the validity of the assessment. If the levee will cause damage to parts of appellant's roadbed not situated within the district, the validity of the assessment depends upon whether the effect upon appellant's property will benefit it to the extent of the assessment made. The assessment is invalid if on the whole the effect would not be to benefit it in an amount equal to the assessment. Gray on Lim. Taxing Power, 7, § 13A; 175 Fed. 845.

3. The entire assessment is invalid by reason of the failure to assess valuable property located within the levee district, being main line and sidetrack belonging to the Chicago, Rock Island & Pacific Railway Company, of a total assessed value of thirty-six thousand dollars. Gray on Lim. Taxing Power, 972, § 1902; *Id.* p. 3. § 3; *Id.* p. 22, § 34; Hamilton, Law of Special Assessments, 524, § 542; 1 Page & Jones on Taxation by Assessment, 898, § 554; *Id.* 1093-1095, § 639; 28 Cyc. 1162; 57 Ark. 554; 48 Ark. 370.

4. The act is void because it authorizes a municipal corporation, which it has created, to levy a tax in excess of five mills. Art. 12, § 4, Const.

5. It is void because it confers special privileges upon certain citizens. Art. 2, § 18. It suspends the operation of a general law for the benefit of a particular corporation, and under circumstances where the courts have jurisdiction to grant the powers. Art. 5, § 24, Const.; 36 Ark. 167.

The act confers corporate powers, and for that reason is void. Art. 12, § 2, Const. It takes away from the original, exclusive jurisdiction of the county court conferred upon by the Constitution. Art. 7, § 28.

6. If the proposed levee is constructed, the effect of it will be to close up and obstruct a natural drain, contrary to law, and an assessment levied for that purpose is illegal. Acts 1909, p. 897; 53 So. 779; 95 Ark. 297.

7.   The members of the board of directors are land owners within the district, and the act virtually makes them judges passing on their own case.   The assessment is void for that reason.

8.   The act is contrary to the Federal and State consti- tutions in that it attempts to impair the obligation of con- tracts, to disturb vested rights and to deprive appellant of the equal protection of the law.

Appellant as to that part of its line situated within the levee district, which was a part of the old Cairo & Fulton Railroad, acquired vested rights under the Constitution of 1868 which can not be interfered with by a construction of different provisions to its detriment to be found in the Constitution of 1874.   Art. 5, § 48, Const. 1868; 30 Ark. 677; 70 Ark. 300.

*Otis W. Scarborough,* for appellee.

1.   Appellant has been and will be benefited by the con- struction of the levee.   This is shown by the evidence.   More- over, whether or not it would be a benefit was a question for legislative determination.   86 Ark. 1; 68 Ark. 376; *Id.* 210; 83 Ark. 54; *Id.* 344; 84 Ark. 390; 86 Ark. 231; 2 Cooley on Taxation, (3 ed.), 1207, 1208; 84 Ark. 268; 81 Ark. 562; *Id.* 208; 1 L. R. A. 673; 65 Ark. 258; 94 U. S. 324; 59 Ark. 536-7; 72 Ark. 119; 125 U. S. 345; 149 U. S. 30; 170 U. S. 45; 181 U. S. 324; 164 U. S. 112.

2.   The law does not require an improvement act to make provision for any damages which may result from its construc- tion.   The weight of the evidence, however, shows that the appellant has not been, and will not be, damaged by reason of the construction of the levee, and the court's finding to that effect has the force of a finding by a jury.

Every doubt on the constitutionality of an act is solved in favor of its validity.   86 Ark. 236; 79 Ark. 236; 60 Ark. 221 59 Ark. 240; 33 Kan. 156; 149 U. S. 30;   See also 95 Ark.; 345; 8 Barnwell & Creswell, 355; 73 Cal. 125; 72 Miss. 677; 164 U. S. 112; 170 U. S. 304; 172 U. S. 269; 125 U. S. 345; 83 Ark. 344; 64 Ark. 355; 70 Ark. 549.

3.   There was no failure to levy tax on any part of the property located within the district, and the assessment was not void.   The property of the Chicago, Rock Island & Pacific

Railway Company was assessed at the same per cent. as that of appellant. The contract with that company for certain work was authorized by sec. 7 of act 229. It was not an abuse of discretion nor a frittering away its right of taxation, but was for the benefit of the district, and the amount expended by that company was in excess of the total amount of taxes the district could collect from it during the life of the levee. 96 U. S. 341; 159 Mass. 545; 84 Pa. St. 487.

4. The district created by the act 229 is not a municipal corporation, but an improvement district, and can levy taxes for improvements in excess of five mills. 79 Ark. 234; 28 Ark. 270; 30 Ark. 665; 11 Kan. 23; 74 Wis. 620; 55 Ark. 148; 42 Ark. 152; 52 Ark. 107.

5. The act confers no special privileges. Levee districts are *sui generis* creations of the Legislature of a local public character for the reclamation and protection of lands and the development of the country in which the public and State have some interest, and are not in violation of art. 2, § 18, Const.

The Legislature may, in its discretion, pass a special act notwithstanding there may be a general act covering the same subject, and such special acts are not unconstitutional. The act in question here is valid and not in violation of art. 5, § 24 Const. 59 Ark. 529; 35 Ark. 73; 48 Ark. 384; 61 Ark. 21; 58 Ark. 407; 64 Ark. 89; 80 Ark. 337; 87 Ark. 8.

It confers no special corporate power on the district. 59 Ark. 533; 11 Kan. 23; 74 Wis. 62; 99 Ark. 100; 133 Ill. 464.

The act does not take away any of the original authority and jurisdiction granted to the county court by the Constitution. 21 Ark. 40; 48 Ark. 385, and authorities *supra.*

6. The requirement in the act that the directors of the district should be land holders therein is not in violation of art. 7, § 20, of the Constitution. Property holders in improvement districts are not disqualified by the Constitution from becoming members of levee and improvement district boards, and boards of directors, etc., of improvement districts are not courts, nor the members thereof judges.

7. Appellant is not exempt from levee taxes because it succeeded to the rights and exemptions of the Cairo & Fulton Railway Company. That company had at best only a quali-

fied exemption from State and county taxes, and never any exemption from local improvement or special taxation.   Art. 5, § 8, Const. 1868; *Id.* § 48; 41 Ark. 509; *Id.* 436; 44 Ark. 17; 95 U. S. 319; 98 U. S. 359; 96 U. S. 449; 180 U. S. 1; 146 U. S. 279; 86 Ark. 109; 87 Ark. 8; 164 U. S. 662; 147 U. S. 190; 149 U. S. 30; 114 U. S. 176.

Wood, J.   The Legislature of 1909 (Acts 1909, c. 229), passed an act creating a levee district embracing certain lands in Jackson County.   The district is designated in the act as "Levee District No. 2."   The district is declared a body corporate.   Certain individuals (three in number) are named as directors, and upon them are conferred certain powers and enjoined certain duties which are specifically set forth in the act.   Acting under these prescribed powers, the board of directors passed the following resolution:

"That a tax of seven per cent. for the year 1909 be and the same is hereby levied on all the property situate and lying in Levee District No. 2 of Jackson County, Arkansas, subject to the taxes for levee purposes as provided by said act."

A part of the appellant's line of railway is situated in the district.   Appellant filed objections and exceptions with the levee board to the assessment in accordance with the provisions of the act, which exceptions were overruled, and this appeal has been duly prosecuted.

Appellant contends that the act itself, and the assessment thereunder against it, are void for various reasons, which we will consider in the order presented in its brief.

1.   Its first contention is that it will not be benefited by the construction of the proposed levee.

After the Legislature has determined that a certain area which it has organized into an improvement district will be benefited by the improvement, it is not a question for the courts to determine upon a preponderance of the evidence as to whether or not the legislative judgment has been properly exercised.   It is only an arbitrary and manifest abuse of power by the Legislature in creating improvement districts that will be reviewed by the courts.

Mr. Cooley says:   "The whole subject of taxing districts belongs to the Legislature.   It has been repeatedly decided that the legislative act assigning districts for special taxation

on the basis of benefits can not be attacked on the ground of error in judgment regarding the special benefits and defeated by satisfying a court that no special or peculiar benefits are received. If the Legislature has fixed the district, and laid the tax for the reason that in the opinion of the legislative body such district is peculiarly benefited, its action generally must be deemed conclusive." 2 Cooley on Taxation (3 ed.), pp. 1207-8.

As is said in *Moore* v. *Board of Directors of Long Prairie Levee District,* 98 Ark. 113: "Only an arbitrary and manifest abuse of power by the Legislature would be reviewed, and not merely mistakes of judgment. To hold otherwise would be to take away from the law makers the powers committed to them and to substitute the judgment of the courts, requiring the latter to review every matter alleged to have been erroneously determined by the Legislature." *Louisiana & A. Ry. Co.* v. *State,* 85 Ark. 12. See *Sudberry* v. *Graves,* 83 Ark. 344; *Coffman* v. *St. Francis Drainage Dist.,* 83 Ark. 54; *St. Louis S. W. Ry. Co.* v. *Board of Directors Red River Dist. No. 1,* 81 Ark. 562, and cases there cited.

In *St. Louis S. W. Ry. Co.* v. *Board of Directors of Red River Levee Dist. No. 1, supra,* this court held that where there was evidence sufficient to sustain a finding that a railroad track was benefited by the building of a certain levee, a legislative determination that the railroad should be assessed for the purpose of building such levee is conclusive upon the courts, whether the track was benefited as much as other property in the district or not.

It could serve no useful purpose to set out and discuss in detail the testimony on the question of whether or not the appellant's railroad included within the improvement district is benefited or damaged by reason of the proposed levee. Our conclusion, from an examination of the facts on this point, is that the testimony is sufficient to show that the determination of the Legislature in including appellant's property within the district is not an arbitrary and manifest abuse of power. It being a controverted question of fact, with sufficient evidence to show that appellant's property was benefited, the conclusion of the Legislature to that effect must stand.

2. This court in *Kirst* v. *Street Imp. Dist. No. 120*, 86 Ark. 1, said:

"Special assessments for local improvements find their only justification in the peculiar and special benefits which such improvements bestow upon the particular property assessed."

Therefore, when the Legislature included within the levee district one mile and twenty feet of the main line of appellant's roadbed and sixteen hundredths of a mile of its White River branch, it must have concluded that appellant's railroad within and without the district, as affected by this levee improvement, would be benefited thereby, and not damaged. In designating the particular part of appellant's roadbed for special assessments, the Legislature must have taken into consideration the effect that the local improvement would have upon appellant's property affected by the levee as a whole, because to justify the assessment at all appellant's property affected by the levee must be benefited thereby, and not injured.

Appellant contends that, under the evidence adduced in the case, the proposed levee would obstruct a natural drain that passed under appellant's track at bridge 311, and that this obstruction would cause about one-eighth of the total discharge of the river at flood time to be thrown against appellant's dump outside of the levee district, thereby causing appellant great damage.

The experts introduced to testify in regard to the effect of closing bridge 311 on appellant's dump upon its roadway outside of the district differ widely. The engineer for the levee district estimated that the water would not be increased perceptibly in height, while the experts on behalf of appellant estimated that the increase in height would be from ten and a half to twelve inches. We can not undertake to review this testimony in detail. Our conclusion, after a careful examination of the testimony concerning the effect of the closing of bridge 311 on the appellant's railway outside of the levee district, is that the undisputed testimony does not show that appellant's roadbed will necessarily be damaged by reason of the closing of this brigde. The testimony of the experts, in our opinion, makes the result of the proposed obstruction problematical. The experts on behalf of appellant, in their estimate,

include only the openings for the outlet of the water for two miles south of the river, excluding all openings south of two miles, whereas there is evidence in the record tending to show that the overflow from the river extends from four to six miles south of where appellant's expert witnesses fix the openings, and includes several bridges, trestles and openings for the escape of overflow waters.

The evidence tended to show that there were streams and bayous and a low flat country which relieved the flood waters that passed under bridge 311 of appellant's line, included in the levee district, and provided for their escape. At any rate, the testimony on behalf of appellant in regard to the probable damage that would be done its right-of-way on account of this levee improvement is not sufficient, in our opinion, to warrant a finding that the legislative determination that the appellant's property would be benefited, instead of injured, was incorrect. It must be assumed that the Legislature, through its duly constituted agents, properly investigated this matter and determined that benefits would accrue to appellant by reason of the improvements, and the evidence is not sufficient to show that that determination was arbitrary or manifestly unjust and unreasonable. The same rule of law applies in this as to the subject of benefits above discussed. Moreover, provisions of the act of the General Assembly under consideration show that the Legislature had in view the protection of the lands and property of the people from the highest overflow waters and seep waters along Black and White rivers. The Legislature was dealing with the flood waters of these rivers. See *McCoy v. Plum Bayou Levee Dist.*, 95 Ark. 345.

3. It appears that the Rock Island Railway Company has within the district about six and a half miles of track, having an assessed valuation, according to the Arkansas Tax Commission, of about $36,000, which appellant contends was omitted from the levee assessment, thereby rendering the whole assessment void.

The testimony shows that the levee district had a contract with the Rock Island Railway Company to put a concrete box in one trestle and iron pipes in two other trestles north of Newport and in two trestles south of Newport, to drain off the surface water from the district, and to raise its roadbed, for

which improvements it was to spend $20,900, and that this improvement was to form a part of the levee line of said district, and was to be accepted by the district in lieu of the taxes assessed against the Rock Island Railway Company. It was shown that a part of the Rock Island Railway Company's roadbed, from a certain crossing where the levee intersected it, for a distance of about three miles, was, by contract with the Levee Board, made a part of the levee of the district. It would hâve cost the district between twenty and twenty-five thousand dollars to have built these three miles of levee. It was thus shown that the amount spent for the benefit of the levee district by the Rock Island Railway Company was in excess of the total taxes that the district could have collected from it under the assessment during the life of the levee. This contract, according to the testimony, did not place any additional burden upon the appellant company, but, on the contrary, its effect was to relieve the appellant of the *pro rata* amount it would have had to pay, with the other property owners of the district, for the increased cost of the improvement which the contract with the Rock Island compelled it to make as a part of the levee system in lieu of its taxes. The resolution adopted by the board of directors does not exempt any of the property located within the district from taxation. It levies a tax "on all the property situated and lying in the district."

Section 7 of the act confers upon the board of directors the power "to purchase or condemn any levee now built or hereafter built in said levee district that they may deem of benefit to the work," and "to contract for or condemn the connection of the levee of said levee district with the roadbed of any railroad now built or that may hereafter be built in said levee district in the mode and manner pointed out by law for the condemnation of private property for public use, and to take and use the same for the benefit of said levee district," etc.

The above section, as well as section 6, of the act conferred general powers upon the board of directors "to levee the river front of said Black and White rivers" within the boundaries of the district, "and to protect and maintain the same in such efficient condition as honest, able and energetic efforts on their part may obtain, by building, rebuilding, repairing or raising the levee of said district as aforesaid," and "to

do all acts and make all contracts in their opinion necessary to secure the levee district under their charge from overflows," etc.

The contract made with the Rock Island Railway Company, as shown by the testimony, was not to enable it to escape the payment of its due proportion of the tax assessed for the improvement, but rather was an arrangement by which. in consideration of the tax it would have had to pay, the board agreed that it should perform certain work in the construction of the line of its levee, and that it would purchase of the Rock Island Railway Company a certain portion of its roadbed which it had already constructed, and which was necessary for the completion of the levee which the board had undertaken to build.

4.   The district under consideration is not a municipal corporation within the inhibition of section 4, article 12, of the Constitution, which provides that no municipal corporation shall be authorized to levy any tax on real property to a greater extent in one year than five mills on the dollar of the assessed valuation of the same.   Levee districts like the one under consideration are governmental agencies for the purpose of carrying on certain public improvements, but the powers which are expressly conferred upon them have reference only to these public improvements, and they have, in no sense, such governmental powers as are possessed by municipal corporations.   The powers conferred upon these levee districts are not in any sense legislative or judicial, but are only rather certain ministerial powers and duties which must be exercised in the manner expressly conferred.   They have only such powers as the statute expressly gives them or such as may arise by necessary implication to enable them to perform the duties expressly imposed upon them by the statute.   The power conferred upon them in section 2 "to make such by-laws and regulations from time to time as they may deem proper not inconsistent with their charter and the laws of the State," it will be observed, is only "for the purpose of carrying into effect the object and purposes of their incorporation," and the power "to do all other acts and things not inconsistent with the laws of this State" is limited. it will be observed, to

those things "which may be proper to carry into effect the purposes" of the act.

And the power, conferred upon them by section 9 of the act, "to go over said assessments, hear the complaints of all parties feeling themselves aggrieved by said assessment, and make all necessary corrections in said assessment," etc., is not a judicial power, but only the ministerial duty and function of correcting the assessment so as to make it conform to the requirements of the act.

As was said in *Altheimer* v. *Board of Directors of Plum Bayou Levee Dist.,* 79 Ark. 234, speaking of a levee district, "its powers can not be likened to those of a municipal corporation, whose powers are broader and more general within their prescribed territory and over the subject delegated to them."

5.   Appellee district does not come within section 18, article 2, of the Constitution, which prohibits the Legislature from granting to any citizen or class of citizens privileges which, upon the same terms, shall not equally belong to all citizens. Levee districts are governmental agencies, having *quasi* governmental powers, for making certain improvements for the public weal.   They do not come within the designation "citizen or class of citizens."   They are not granted any privileges, within the meaning of the Constitution, but their grant is of powers in the nature of duties imposed for the public good, and not for private interest or gain.   See *Davis* v. *Gaines,* 48 Ark. 348; *Carson* v. *St. Francis Levee Dist.,* 59 Ark. 536; *Altheimer* v. *Plum Bayou Levee Dist.,* 79 Ark. 234; *Caton* v. *Western Clay Drainage Dist.,* 87 Ark. 8.

6.   The contention that the act violates section 24, article 5, of the Constitution, providing that the "operation of a general law shall not be suspended by the Legislature for the benefit of any individual, corporation or association, nor where the courts have jurisdiction to grant the powers or the privileges or the relief asked for," is not well taken.

This court has held that the Legislature is the exclusive judge "in determining whether a general law will subserve the purposes as well as a special act."   *Carson* v. *St. Francis Levee Dist., supra; Boyd* v. *Bryant,* 35 Ark. 73.   See also *Caton* v. *Western Clay Drainage Dist., supra; Hendricks* v.

*Block,* 80 Ark. 337, and other cases cited in appellee's brief.

7. Section 2, article 12, provides that "the General Assembly shall pass no special act conferring corporate powers, except for charitable, educational, penal or reformatory purposes, where the corporations created are to be and remain under the patronage and control of the State."

In *Carson* v. *St. Francis Levee Dist.*, 59 Ark. 533, we said: "Giving corporate capacity to certain agencies in the administration of civil government is not the creation of such an organization as was sought to be prohibited by section 2, article 12, of the Constitution. We think the conferring of corporate powers, by special act, upon the board of directors of the St. Francis Levee District is not in violation of the Constitution."

8. What we have already said as to the constitutionality of laws creating levee districts disposes of appellant's contention that the act is contrary to section 28, article 7, of the Constitution, conferring upon the county court exclusive original jurisdiction in every case that may be necessary to the internal improvement and local concerns of the respective counties. This court in many (and some very recent) cases has held that it is within the power of the Legislature to create levee districts with power to build, maintain and repair levees with the special assessments levied for that purpose. *McGehee* v. *Mathis,* 21 Ark. 40; *Davis* v. *Gaines,* 48 Ark. 385; *Carson* v. *St. Francis Levee Dist.,* 59 Ark. 536; *St. Louis S. W. Ry. Co.* v. *Red River Levee Dist.,* 81 Ark. 567; *Coffman* v. *St. Francis Drainage Dist.,* 83 Ark. 54; *Sudberry* v. *Graves,* 83 Ark. 344; *Alexander* v. *Board Crawford County Levee Dist.,* 97 Ark. 322; *Butler* v. *Board of Directors of Fourche Levee Dist.,* 99 Ark. 100.

9. Section 8 of the act provides· that the assessment upon the railway track of all railroad companies within said district shall be based upon the valuation as appraised by the board of railroad commissioners, and it shall be the duty of the Secretary of State to certify to the board of directors of said Levee District No. 2 of Jackson County, Arkansas, the value of such railroad track as is located in said district, and the board of directors shall assess the same as provided for in section 6945 of Kirby's Digest.

Appellant contends that the assessment is void because

the certificate of valuation was made by the Arkansas Tax Commission, instead of the Board of Railroad Commissioners.

The Legislature of 1909 passed a law, which was approved May 12, 1909, creating the Arkansas Tax Commission. Section 15 of that act prescribes that the Tax Commission "herein created shall take over, assume and discharge all the duties of said Railroad Commissioners," imposed upon them by section 6938 of Kirby's Digest.

It is manifest that the purpose of section 8 of the act of May 6, 1909, creating the levee district, was to have the railroad property assessed according to law, in order that the board might levee a tax on the property situated in the district according to the law in force when the tax was levied. Under the act of May 12, 1909, § 15, above, it is manifest that the tax commissioners were substituted for the Board of Railroad Commissioners, and that it was therefore the duty of the tax commissioners to make appraisement and valuation of the property provided for by section 8 of the act under consideration, instead of the Board of Railroad Commissioners.

The certificate of valuation of the property of the railroads in the district, it appears from this record, was certified by the Arkansas Tax Commission to the Secretary of State, and by the Secretary of State was duly certified, as required by section 8.

We are of the opinion that there was a compliance with the statute in regard to the assessment of the property of appellant within the district.

10. An act approved May 31, 1909, provides that "it shall hereafter be unlawful for any person to obstruct in any manner any natural drain in this State," and provides that all laws and parts of laws in conflict with it are repealed.

Appellant contends that the construction of the proposed levee is contrary to the above act. The law above mentioned is a general act, and does not repeal the special act creating the levee district. It is not in necessary conflict with it, and, in fact, has no application whatever to levee districts created by law for the purpose of protecting the territory embraced therein from overflows. Furthermore, even if this were not the case, there is no evidence in this record showing that the appellee district has violated the above statute.

11. It is next insisted that the assessment is void because each member of the board of directors must be a land owner in the district whose lands will be enhanced in value by reason of the construction of the levee in question, and that the act, therefore, virtually makes them judges passing on their own case, and that this comes within the inhibition of section 20, article 7, of the Constitution, providing that no judge or judges shall sit in the trial of any case in the event of which he may be interested.

The act, as we have already observed, confers no judicial powers upon the members of the board of directors. The constitutional provision has reference to courts and those exercising judicial functions. The duties of this board of directors are ministerial, and not judicial. This is made plain by section 4, as well as other sections of the act.

In *Hibben* v. *Smith*, 191 U. S. 310, the court, speaking of a board of trustees of a town who had made an assessment for local improvement, said:

"It is a matter of legislative discretion as to how such a board shall be constituted, and we hazard nothing in saying that it is quite common throughout the country for the legislatures of the States to create tribunals for levying assessments for local improvements in a manner precisely like the case in question. It is not at all analogous, even in principle, to a judge of a court acting in a case in which he is personally interested."

In that case the objection was made that the members of the board were residents of the town, interested in the property situated therein, and that the act constituting a tribunal composed of such residents resulted in making a person judge in his own case. The Supreme Court overruled the contention, using the language above quoted.

12. The last contention of appellant is that the act in question attempts to impair the obligation of contracts, disturbs vested rights, and therefore deprives appellant of the equal protection of the laws.

The basis of this contention is that the appellant succeeded to all the rights, exemptions and privileges of the Cairo & Fulton Railroad Company of Arkansas, having filed its charter as the successor to that company in the office of the Secretary

of State prior to the adoption of the Constitution of 1874, and that therefore its rights must be determined by the provisions of the Constitution of 1868, under which it acquired vested rights as the successor to the Cairo & Fulton Railroad Company.

The Constitution of 1868, article 5, § 8, provides: "The General Assembly shall pass no special act conferring corporate powers. Corporations may be formed under general laws, but such laws may from time to time be altered or repealed."

Section 48 of the same article provides: "The property of corporations now existing or hereafter created shall forever be subject to taxation, the same as property of individuals."

The Constitution of 1868 was adopted February 11 of that year. On July 23 of the same year the General Assembly passed "An act to provide for a general system of railroad incorporation."

The appellant, as the successor to the Cairo & Fulton Railroad Company, was subject to both general and special taxation under the Constitution of 1868, and the act of 1868, under which it was consolidated with the Cairo & Fulton Railroad Company.

As we have already seen, the provisions of the Constitution of 1868 prohibiting the General Assembly by special act from conferring corporate powers is precisely similar in that particular to section 2, article 12, of the present Constitution. As we have already seen, the conferring of corporate powers on certain governmental agencies for making certain improvements for the benefit of the public is not within the inhibition of our present Constitution, nor does the creation of the levee district under the Constitution in any manner contravene the provisions of the Constitution of 1868, above mentioned.

The judgment is correct, and it is affirmed.