STIMSON VENEER & LUMBER TRUST *v*. LACONIA LEVEE DISTRICT OF DESHA COUNTY.

4-8611                                    214 S. W. 2d 70

Opinion delivered October 18, 1948.

*Daggett & Daggett,* for appellant.

*DeWitt Poe,* for appellee.

HOLT, J. Laconia Levee District of Desha county, appellee, brought this action to foreclose its lien against certain lands, including the lands of appellant here involved, for delinquent taxes for the years 1943, 1944, and 1945. Appellant in its answer and cross-complaint denied the District's right to foreclose on the ground "that all of said lands are located outside or on the river side of the levees of the Laconia Levee District and receive no benefit or protection whatever from the District or its levees, and that to collect tax from said land would be an unauthorized and illegal taking under the laws and Constitution of the United States and the State of Arkansas, and asks that the complaint heretofore filed be dismissed and that all right, title, claim to, or demand of the appellee in and to said lands be cancelled and the title quieted in appellant and that appellee be enjoined from hereafter attempting to collect taxes from the above and described lands."

Appellee, District, replied, admitting that appellant's lands were west of what is known as the White

River Levee and subject to overflow, but denied that said lands are not benefited. From a decree in favor of appellee is this appeal.

The following facts were stipulated as true: "1. That the Stimson Veneer & Lumber Trust is the owner of the following described lands, to-wit: (describing them).

"2. That the boundaries of the Laconia Levee District were fixed by Act 463 of the year 1917, by the Arkansas General Assembly, whereby the western boundary of the District was fixed as Scrub Grass Bayou, the northern line being the county line between Phillips county and Desha county, and the eastern and southern line being the Mississippi River Levee, and comprising some 30,000 acres of land; that by said Act the District was authorized to issue bonds and levy a tax upon the lands in the district, the purpose being to enlarge and construct its levees as reflected by the map attached hereto, which is made a part of this stipulation and which the parties agree is accurate; that bonds were issued and the levee tax pledged, which levy was by § II of Act 463 of 1917 made continuous and obligatory upon the lands within said district until said indebtedness should be fully paid; that there now remains unpaid of said indebtedness the sum of $77,000, evidenced by serial refunding bonds, dated May 1, 1946, bearing interest at the rate of 2½ per cent. per annum.

"3. That the lands of the Stimson Veneer & Lumber Trust are west of the levee of the Laconia Levee District and east of the Scrub Grass Bayou, and are now, and have been at all times, subject to backwater overflow of the Mississippi River and White River, as shown by the map attached hereto.

"4. That many years after the construction of the Laconia Levee District Levee the White River Drainage District constructed a levee along the east bank of the White River and east of the cross-complainant's lands and joined the Laconia Levee on its western edge; that since the construction of said White River Drainage District levee the water level on these lands from the Mis-

sissippi River overflow and backwater up the White River has been materially increased.

"5. That all of the lands of cross-complainant herein involved are wild and unoccupied lands.

"6. It is stipulated and agreed that west of Bayou, NW¼ of section 35, township 7 south, range 1 west, is without the boundaries of the district and should be stricken from the tax rolls."

It was also stipulated that St. George Richardson, a civil engineer of Memphis, Tennessee, whose qualifications are unquestioned, if present, would testify, among other things, that "I am entirely familiar with the area here in dispute. I have been upon the lands upon numerous occasions. I have studied the exhibit which has heretofore been introduced herein, the lands in question being indicated thereon by the area shaded red. It is my opinion, based upon my personal knowledge of these lands and upon my study of the aforesaid exhibit, that the levee constructed by the Laconia Levee District is not now, nor could it ever be, of any benefit to these lands. Therefore, taxation of said lands by the district would be, in my opinion, an arbitrary and manifest abuse of its taxing power."

There was also introduced in evidence, by appellee, "a decree dated the 21st day of April, 1919, in Desha Chancery Court in the case of *White River Lumber Company, et al.,* v. *Laconia Levee District, et al.,* which decree recited that all the lands described in the complaint were assessed by the Laconia Levee District for the years 1915, 1916, 1917, and 1918, and that payment of said taxes was refused by the respective owners upon the claim that said lands were not benefited and were erroneously assessed in said district. Said decree held that certain lands of plaintiffs were benefited and liable to assessment for taxation and rendered judgment" for the delinquences. Said lands were described as follows: (describing them).

"The court held that all other lands described in the complaint, and not included in the above listed, were out-

side the boundaries of the Laconia Levee District and not benefited by the improvement, set aside the former assessments, and exempted said lands from future assessments.''

Appellee is relying upon the provisions of Act 463 of the Legislature of 1917 for its authority to impose and collect the taxes on the lands'of appellant involved here. That Act is entitled: ''AN ACT to authorize the Laconia Levee District in Desha county to borrow money and to prescribe and define the boundaries of, and the property within, said district, upon which imposts may be assessed and collected to provide funds to pay the principal and interest of said borrowed money, and other necessary expenses of the district.''

Section 1 of the Act authorized the borrowing of money not in excess of $300,000 for paying debts and making needed improvements in the levee system and to issue negotiable 6% bonds, etc.

Accordingly, money was borrowed and the district has still outstanding refunding bonds in the approximate amount of $77,000.

Section 2 provides: ''To secure the payment of said bonds and the interest thereon as they mature, said board of levee inspectors shall have the right to execute an instrument to a trustee for the bondholders, by which it shall pledge and mortgage all its income to secure the payment of said bonds, and shall levy and collect in said district annually on the following described property, to-wit:

''Beginning at the base of the Mississippi River, in the northeast quarter of section 6, township 7 south, range 2 east, on the line between Desha and Phillips counties; thence due west to the east bank of Scrub Grass Bayou, in section 2, township 7, range 1 west; thence southwardly along the east bank of Scrub Grass Bayou to the line between the north and south halves of section 7, township 8 south, range 1 east; thence eastwardly and northwardly along the south and east base of the Mississippi River levee, to the point of beginning (the limits

of said levee district being hereby fixed and determined by said above recited description), and also upon all railways, tramways and rights of way which are located within the above described boundaries, which now are or shall become taxable for state revenue, a levee tax not exceeding ten (10) per cent. of the value assessed there against for the purpose of state and county general taxation; which levy is hereby made continuous and obligatory until all of said bonds and interest thereon shall have been fully paid."

This section is the Legislature's determination as to the district's boundaries and it is undisputed, as has been indicated, that appellant's lands are within these boundaries.

Whether the lands of appellant involved here, admittedly within the boundaries of the district, were benefited by the improvement and subject to the payment of the assessments imposed depends on whether the Legislature, in creating the Improvement District, manifestly and arbitrarily abused its powers under the Act, *supra*. The guiding rule was announced by this court in *St. Louis, Iron Mountain & Southern Railway Company v. Board of Directors of Levee District No. 2 of Jackson County*, 103 Ark. 127, 145 S. W. 892, in this language: "After the Legislature has determined that a certain area which it has organized into an improvement district will be benefited by the improvement, it is not a question for the courts to determine upon a preponderance of the evidence as to whether or not the legislative judgment has been properly exercised. It is only an arbitrary and manifest abuse of power by the Legislature in creating improvement districts that will be reviewed by the courts.

"Mr. Cooley said: 'The whole subject of taxing districts belongs to the Legislature. It has been repeatedly decided that the legislative act assigning districts for special taxation on the basis of benefits can not be attacked on the ground of error in judgment regarding the special benefits and defeated by satisfying a court that no special or peculiar benefits are received. If the Legislature has fixed the district, and laid the tax for the

954

reason that in the opinion of the legislative body such district is peculiarly benefited, its action generally must be deemed conclusive.' 2 Cooley on Taxation (3 Ed.), pp. 1207-8.

"As is said in *Moore* v. *Board of Directors of Long Prairie Levee District,* 98 Ark. 113, 135 S. W. 819: 'Only an arbitrary and manifest abuse of power by the Legislature would be reviewed, and not merely mistakes of judgment. To hold otherwise would be to take away from the lawmakers the powers committed to them and to substitute the judgment of the courts, requiring the latter to review every matter alleged to have been erroneously determined by the Legislature.

We think it would serve no purpose to attempt to discuss and analyze the facts presented on the question of whether appellant's lands have been benefited or improved by the levee. It suffices to say that after a careful review of the record we conclude that the testimony is sufficient to show that the determination of the Legislature, in including within the district the lands of appellant, was not an arbitrary and manifest abuse of its powers under the rule announced above.

In reaching this conclusion, we are not influenced by the decree of the Desha Chancery Court of April 21, 1919, *supra,* and attach no importance to it.

We attach great weight to the undisputed fact that appellant, or its predecessors in title, (just when appellant acquired title, the record does not show), since the creation of this district, under Act 463 of 1917, has paid all annual installments extended against these lands, without objection. It therefore for many years had knowledge that its lands were included in the district, and that bonds had been issued and sold, which became a burden not only upon appellant's lands but upon all the lands in the district.

In the circumstances, appellant's objection comes too late. (*Tarleton Drainage District No. 15* v. *American Investment Company,* 186 Ark. 20, 52 S. W. 2d 738.)

Finding no error, the decree is affirmed.